DULANEY TOWERS MAINTENANCE CORPORATION

ET AL. v. JAMES M. O'BREY ET UX.

[No. 1527, September Term, 1979.]

*Decided September 5, 1980.*

The cause was argued before Liss and MacDaniel, JJ., and Miller Bowen, Associate Judge of the District Court of Maryland for District 12, specially assigned.

*Philip O. Foard,* with whom were *Robert J. Aumiller* and *White, Mindel, Clarke & Hill* on the brief, for appellants.

No brief or appearance by appellees.

BOWEN, J., delivered the opinion of the Court.

The circumstances giving rise to this appeal are quite simple. The appellees purchased a unit in a condominium regime known as the Dulaney Towers Townhouse Condominium No. 2 (hereinafter called Dulaney) on or about May 10, 1976. When they moved in, they kept and maintained a poodle in their unit. On October 1, 1976, the board of directors of Dulaney adopted numerous rules and regulations, among them being Para. E-2 as follows:

> One dog or one cat may be kept by the unit owner or occupant, but shall not be kept, bred, or used therein for any commercial purpose. The present pet population is exempt from this rule.

Proper notice of the adoption of the rules and regulations was given to the unit owners.

In August, 1977, the appellees purchased a second poodle and maintained both poodles in their unit. The appellants requested that one of the dogs be removed. The appellees refused and the appellants filed this suit in the Circuit Court for Baltimore County, requesting that the appellees be permanently enjoined from maintaining more than one dog in their unit. The Chancellor granted the appellees' Motion for Summary Judgment on November 9, 1979. The appellant filed this timely appeal raising the following issue:

> Was the lower court correct in its determination that Sections 11-104 and 11-109 of the Real Property Article do not permit the council of unit owners of a condominium regime to delegate all of its regulatory authority to a board of directors, including the authority to promulgate and enforce rules and regulations restricting the use of common areas and individual units within that regime?

When a controversy arises as to a resident's right as a unit owner in a condominium, the courts must examine the condominium enabling statutes for relevant provisions, con-

sider the master deed or declaration, study the bylaws, and attempt to reconcile the three. See *Sterling Village Condominium, Inc. v. Breitenbach,* 251 So. 2d 685 (Fla. 1971.)

House rules, (sometimes called household regulations or rules of conduct), are rules and regulations of a condominium that generally deal with the use and occupancy by owners of units and common areas, patios and other exterior areas, parking, trash disposal, pets, etc. They frequently prohibit conduct that could constitute a nuisance. It has been said many times by many courts that if the house rules are reasonable, consistent with the law, and enacted in accordance with the bylaws, then they will be enforced. Hickok, *Promulgation and Enforcement of House Rules,* 48 St. Johns L. Rev. 1132, 1135 (1974). The one rule of Dulaney under attack in these proceedings is that set forth above, relating to the limitation of one pet per unit.

Perhaps, because owners of dogs cannot understand why others do not love their dogs as they do, the house rules of cooperative housing communities dealing with the regulation of pets have been the subject of many cases. Invariably, the courts have adopted a hard-line approach and have upheld condominium board of directors' regulations as to dogs, even to the exclusion of dogs, as being reasonable and enforceable. The courts stress that communal living requires that fair consideration must be given to the rights and privileges of all owners and occupants of the condominium so as to provide a harmonious residential atmosphere. The rationale for allowing the placing of restrictions in, or the barring of pets by way of, house rules is based on potentially offensive odors, noise, possible health hazards, clean-up and maintenance problems, and the fact that pets can and do defile hallways, elevators and other common areas. See *Justice Court Mut. Housing Co-op v. Sandow,* 270 N.Y.S. 2d 829, 832 (Sup. Ct. Queens County 1966); *Kings View Homes, Inc. v. Jarvis,* 369 N.Y.S. 2d 201 (1975); *Riverbay Corporation v. Klinghoffer,* 309 N.Y.S. 2d 472 (1970); *Cf. Valentine Gardens Cooperative, Inc. v. Oberman,* 237 N.Y.S. 2d 535 (1963). We

join the other states in this view and hold that the specific house rule in question is reasonable.

The law controlling the controversy here is contained in Title 11 of the Real Property Article, commonly referred to as the "Horizontal Property Act." Section 11-104 provides in part:

(a) *Bylaws to govern administration* — The administration of every condominium shall be governed by bylaws which shall be recorded with the declaration. If the council of unit owners is incorporated, these bylaws shall be the bylaws of that corporation.

(b) *Required particulars* — The bylaws shall express at least the following particulars

(1) The form of administration, indicating whether the council of unit owners shall be incorporated or unincorporated, and whether, and to what extent, the duties of the council of unit owners may be delegated to a board of directors, manager or otherwise, and specify the powers, manner of selection and removal of them: . . .

(c) *Permissible additional provisions* — The bylaws also may contain any other provision regarding the management and operation of the condominium including any restriction on or requirement respecting the use and maintenance of the units and the common elements.

In his memorandum opinion, the Chancellor stated:

There is no Maryland case dealing with this Statute. There is a very similar case in Massachusetts, *Johnson v. Keith,* 331 N.E.2d 879, that states: 'Where a person's right to use his or her own property is involved, any ambiguity in an asserted restriction of this type should be construed in favor of the freedom of the property from that restriction.' The *Johnson* case is not binding, but its reasoning is persuasive and its conclusion sound. A distinction

may be drawn between Rules relating to the maintenance and control of the common elements, as opposed to Rules relating to conduct within an owner's unit. If it was desired to place legal restrictions on the use of their property by unit owners, it could have been and should have been set forth in the bylaws. This Court construes the Statute as not only permitting, but requiring that any restrictions on the use of condominium units must be set forth in the By-Laws.

We think the Chancellor was in error in drawing a distinction between "Rules relating to the maintenance and control of the common elements, as opposed to Rules relating to conduct within an owner's unit," and in "requiring that any restrictions on the use of condominium units must be set forth in the bylaws."

In *Johnson v. Keith, supra,* the Massachusetts court was interpreting its own State's condominium statute concerning the right to restrict pets. The court summarized pertinent portions of that law at page 881 as follows:

If the condominium is to be managed by an unincorporated association, as here, the master deed must set forth the names of the managing board. *Ibid.* The by-laws of the organization of unit owners in turn must contain certain provisions. Sec. 11. They must provide '(t)he method of adopting and amending administrative rules and regulations governing the details of the *operation and use of the common areas and facilities'* (emphasis supplied). Sec. 11 (d). In addition, the by-laws must contain any 'restrictions on and requirements respecting *the use and maintenance of the units* and the use of the common areas and facilities, not set forth in the master deed, as are designed to prevent unreasonable interference with the use of . . . the owners' respective units and of the common areas and facilities by the several unit owners' (emphasis supplied). Sec. 11 (e).

Since the challenged rule "(n)o animal or reptiles of any kind shall be raised, bred, or kept in any unit or in the Common Area and Facilities" sought to regulate the maintenance of animals "in any unit," the court concluded that the challenged regulation, in order to be effective, must have been enacted and recorded as a bylaw.

As pointed out by the appellee, this statute, regarding use restrictions and management, is virtually identical to Md. Sec. 11-111 (f) that was repealed when Maryland's Horizontal Property Act was revised on July 1, 1974.[1] Section 11-104 was enacted in place of former section 11-111 (f) and was the law on October 1, 1976, the date of the enactment of Dulaney's house rules. Unlike Sec. 11-111 (f) that made it "mandatory" that restrictions on use of the units and use of the common elements be contained in the bylaws, Section 11-104 (c) now provides that restrictions on use of the units and the common elements are "permissible" as bylaws. The new section cannot be discounted as meaningless. It clearly intends to eliminate the mandatory effect that was explicitly provided for in Sec. 11-111 (f). The new language, "also may contain," drastically changed the import of the bylaws and their content. There is nothing now that, in any way, *requires* that a restriction affecting the use of an individual unit be enacted as a bylaw.

As a matter of fact, it is the exception rather than the rule that bylaws contain specific restrictions respecting use of units and common areas. Common statutory schemes provide that bylaws entrust the responsibility for administration of a condominium to a board of directors. 15A Am. Jur. 2d, *Condominiums and Cooperative Apartments,* § 16, states this accepted practice of putting restrictions on the use of such condominium units as follows:

> Occasionally the bylaws also contain regulations concerning the use of the condominium by its owners, but usually such regulations are contained

---

1. Laws 1974, Ch. 641, was made to apply to "existing condominiums." *See also* Real Property Article § 11-128 (a).

in a separate instrument listing a number of rules designed to promote the communal comfort of those living in the condominium, such as restrictions on the parking of automobiles, against the keeping of pets, etc.

The Massachusetts statute, with respect to form of administration or management, is also quite similar to former section 11-111 (a) which provided that the "bylaws must necessarily provide for at least" a "form of administration, indicating whether this shall be in charge of a manager, or a board of directors, or otherwise and specify the powers," etc. Compare current sections 11-109 (a) & (b) which provide that "the affairs of the condominium shall be governed by a council of unit owners" and that "the bylaws may authorize or provide for the delegation of any power of the council of unit owners to a board of directors, . . ."

This clear and unmistakable language represents a significant change in the law that existed prior to July 1, 1974. Under the revised act, within the authority contained in sections 11-104 and 11-109, house rules containing restrictions as to use may be enacted through rules and regulations adopted by a board of directors, so long as the enactment is within the scope of the powers delegated to the board, as set forth in the Master Deed and Declaration and the bylaws.

An examination of the Master Deed and Declaration reveals that Section XI provides:

All present and future owners, tenants and occupants of Units shall be subject to, and shall comply with, the provisions of this Master Deed and Declaration, the By-Laws and the Rules and Regulations, as they may be amended from time to time. The acceptance of a deed or conveyance or the entering into of a lease or the entering into occupancy of any Unit shall constitute an agreement that the provisions of this Master Deed and Declaration, The By-Laws and *the Rules and*

*Regulations as they may be amended from time to time, are accepted and ratified by such owner, . . .* and shall bind any person having at any time any interest or estate in such Unit, as though such provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof . . ." (emphasis supplied).

We note that the rule in question was enacted in accordance with the bylaws of Dulaney, filed with the Master Deed on January 22, 1974, that provides as follows:

## ARTICLE V. *OBLIGATION OF OWNERS*

### Section 7: *Rules of Conduct*

(e) The Board of Directors may make such other reasonable rules as they may deem appropriate.

The Chancellor below drew a distinction between the rules relating to the maintenance and control of the common elements, and the rules relating to conduct within an owner's unit. *Johnson v. Keith, supra,* was cited as authority. As stated previously, the statute analyzed in *Johnson* is not the same as the statute in effect in Maryland on October 1, 1976. We find nothing in the current Maryland law (Sec. 11-104) that creates such a distinction. All rules and regulations properly adopted by a council of unit owners or its designee that apply to an owner's unit are as binding on the residents of a condominium as those that apply to the common areas.

The sum and substance of what we have stated is that under the current Maryland Horizontal Property Act, a council of unit owners in a condominium may delegate its powers of administration or management to a board of

directors which may in turn make *reasonable* rules and regulations concerning conduct, not inconsistent with the Master Deed and Declaration and bylaws, including the regulation or prohibition of pets. The rule in question is reasonable and was adopted properly.

*Judgment reversed.*
*Costs to be paid by appellees.*