**WESTBRIDGE CONDOMINIUM ASSOCIATION, INC.,**
**Appellant,**

v.

**Janis M. LAWRENCE, Appellee.**

**No. 87–1201.**

District of Columbia Court of Appeals.

Argued Jan. 12, 1989.
Decided March 9, 1989.

Devin J. Doolan, with whom Marianne K. Renjilian, Washington, D.C., was on the brief, for appellant.

Janis M. Lawrence, pro se.

Before NEWMAN, TERRY and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

Westbridge Condominium Association, Inc. (WCA) appeals from a finding by the Small Claims and Conciliation Branch of the Superior Court that a $150 move-in fee levied against Lawrence, a unit owner who moved into the condominium and refused to pay the fee, was invalid.[1] On appeal, WCA claims that the imposition of the move-in charge was within the Board of Directors' inherent rulemaking authority as well as authorized under D.C.Code § 45–1848 (1981).[2] We agree with the trial court. The condominium documents provide only one method for making an assessment for common elements expenses, a pro rata allocation of costs among all unit owners, thereby limiting the Board of Directors' power to impose a move-in fee under an alternative method of assessment and rendering § 45–1848 inapplicable. We find the move-in fee invalid and affirm.

I.

Lawrence took title to her unit in September 1979, and moved in. Sometime later Lawrence moved out of her unit, although she did not sell her ownership inter-

---

1. This court granted WCA's application for allowance of an appeal from the Small Claims court pursuant to the provisions of D.C.Code § 11–721(c) (1981); D.C.App.R. 6(d) (1988). An application may be allowed "where appellant states grounds showing apparent error or a question of law which has not been but should be decided by" this court. *Karath v. Generalis,* 277 A.2d 650, 651 (D.C.1971).

2. Section 45–1848 provides in relevant part:
   (a) Except to the extent expressly prohibited by the condominium instruments, and subject to any restrictions and limitations specified therein, the unit owners' association shall have the:
   
   \* \* \* \* \* \*
   
   (5) Power to manage the common elements and to provide for the use, rental or operation of common elements or limited common elements[, and]
   (6) Right to any income derived from payments, fees or charges for the use, rental or operation of the common elements of the condominium.

est. When Lawrence bought the unit, she was aware that the condominium documents empowered the Board of Directors to promulgate rules and regulations necessary for the administration of the condominium, provided that such rules did not conflict with the Condominium Act or the condominium documents. *See* WCA Bylaws, Art. 6, § 2 & Art. 8, §§ 8, 10; WCA Declaration, § 9(B).[3] It was under this general grant of authority that the Board of Directors enacted Rule 18(d), which established the move-in fee.

The condominium documents also provided the unit owners with specific information about their financial liability to WCA, including the types of common elements expenses they would be responsible for and the manner in which these costs would be allocated among them. Under the Bylaws, the Board of Directors is responsible for the "maintenance, repair, and replacement" of all of the common elements,[4] which cost shall be charged to all unit owners as a common expense "unless necessitated by the negligence, misuse or neglect of a Unit Owner, in which case such expense shall be charged to such Unit Owner." WCA Bylaws, Art. 8, § 5(a). The Bylaws also require the Board of Directors annually to prepare a budget estimating the cost of such "maintenance, management, operation, repair and replacement of the Common Elements," which cost "shall be assessed against each Unit in accordance with its Percentage Interest based on its

Par Value."[5] WCA Bylaws, Art. 8, §§ 1(b)–(c).

In July 1986, Lawrence moved back into her unit, whereupon WCA levied the $150 move-in fee against her. Lawrence refused to pay the charge, claiming that the condominium documents prohibited the Board of Directors from levying an assessment for common elements expenses against an individual unit owner and, further, that these expenses were already provided for in the owners' annual condominium fee. WCA subsequently filed suit to compel payment of the move-in fee, arguing that the fee is a proper exercise of the Board of Directors' authority and reflects a reasonable attempt to attribute costs associated with the temporary exclusive use of common elements attendant to moving to the owners responsible for them.

The trial court found that the move-in fee was invalid because the condominium documents do not authorize the Board of Directors to make assessments of common elements expenses against individual unit owners, except in the case of owner negligence, misuse or neglect, and WCA never alleged that Lawrence's move had caused any damage to the common elements.

Furthermore, the court held that the evidence concerning the ostensible purpose of the move-in fee to cover expenses, that is, to pay for "general oversight responsibilities by condominium employees, extra use of facilities such as the loading dock, hallways, freight elevator, and cleaning the

---

3. For example, Article 8, § 10 of the WCA Bylaws provides:

> Rules and Regulations concerning the operation and use of the Residential Units and Common Elements may be promulgated and amended by the Board of Directors, provided that such Rules and Regulations are not contrary to or inconsistent with the Condominium Act, the Declaration or these By-Laws.

4. The Common Elements are defined as:

> all of the areas, equipment and facilities of the Condominium that serve more than one Unit and are not Units or Limited Common Elements ... [and] include, but are not limited to, the land, ... *hallways, corridors, lobbies,* ..., air ducts, lateral serving stacks, ... janitor closets, trees, shrubbery, walkways and swimming pool.

WCA Declaration, ¶ 1 (emphasis added).

5. Article 8, § 1(b)–(c) of the WCA Bylaws provide in relevant part:

> (b) Each year the Board of Directors shall present to the Unit Owners ... a proposed budget for the next calendar year for the Condominium containing an estimate of the total amount which it considers necessary to pay the cost of *maintenance, management, operation, repair and replacement of the Common Elements.*
> (c) The total amount of the estimated funds required for the payment of all items of expense for the operation of the Condominium set forth in the budget for the fiscal year ... *shall be assessed against each Unit in accordance with its Percentage Interest based on its Par Value.*

area up," revealed that these are costs "already provided for and paid by assessments made against each unit in accordance with its percentage interest based on its par value."[6] That is, the move-in fee represented a double charge for services Lawrence had already paid for in her annual condominium dues.

The court therefore concluded that the move-in costs WCA sought to recover are "explicitly made the responsibility of [WCA] and not of any one unit owner," and the Board of Directors' attempt to shift that burden through the adoption of the Rule 18(d) move-in fee resulted in the imposition of an invalid charge which Lawrence was not legally obligated to pay.

## II.

"[I]n a case tried without a jury, this court may review the facts and the law of the case, but we cannot set aside the judgment except for legal errors unless the judgment is plainly wrong or without evidence to support it." *Biggs v. Stewart*, 361 A.2d 159, 163 (D.C.1976) (footnote omitted).

■■ Although "the governing body of a condominium has broad authority to regulate the internal affairs of the development, this power is not without limit." *Johnson v. Hobson*, 505 A.2d 1313, 1317 (D.C.1986). To determine whether the governing body

of a condominium has properly exercised its rulemaking authority, we must decide "whether the action taken was within the legal powers granted the governing body by relevant statutory or condominium document provisions." *Id.* Under the present set of facts we agree with the trial court's conclusion that the Board of Directors exceeded the scope of its authority by imposing the move-in fee.[7]

The Bylaws explicitly make common elements expenses the responsibility of WCA, and provide the Board of Directors with a method of collecting these costs from the owners: a pro rata allocation of expenses among *all* unit owners except in cases of owner negligence, misuse or neglect, where the cost may be assessed against the individual unit owner. As the evidence plainly shows, Lawrence's move-in involved the temporary and non-exclusive use of common elements which did not preclude the use of these facilities to other tenants or result in any damage to the facilities. Under the Bylaws, the "cost" of this use, including the administrative expense of handling the move-in, must be assessed against all owners under the pro rata allocation method. The Board of Directors' adoption of the move-in fee created an alternative method for assessing these expenses in contravention of the Bylaws and therefore, is invalid.[8]

(Emphasis added).

6. WCA's building manager testified that the move-in fee is necessary to cover the costs associated with a changing occupancy. The manager identified the parts of the building that generally are used during a move-in:

> [T]he loading dock, the doors to the second floor entranceway, the entranceway in the second floor, the elevator, freight elevator usually, and the ... common area floor on which the move-in takes place. In addition, movers on occasion have gone down into the ... garage because there is a storage space ... and movers take things into the storage space. They also move things out of there. There's a bicycle rack on the first floor and movers ... might move a bicycle in there.
> Movers come into the lobby to get the key to the loading dock chain. They come in there to get the key to the elevator to turn it off. They might come in there to get a drink of water or go to the bathroom or ask inquiries of the desk clerk. In other words, that's basi-

cally what is used in common elements in a move-in.

He testified further that WCA incurred "extra expenses" incidental to the move-in because of the:

> extra use of the elevator in terms of [the] movers, ... the administrative set up required for new owners, ... the general oversight of the move by employees—myself, desk clerk, porters, the maintenance person—the extra expenses in cleaning the hallways or the freight elevator or sweeping the steps or the second floor loading dock area, and ... extra expenses preparing for carting away the boxes.

7. *Compare Reynolds v. Gateway Georgetown Condominium Ass'n, Inc.*, 482 A.2d 1248, 1252 (D.C.1984) (finding that the Bylaws permitted the association's board of directors to impose a move-in/move-out fee).

8. This case does not present, and therefore we do not address, the question whether the Board of Directors could make an individual assess-

Second, WCA claims that D.C. Code § 45–1848 (1981) authorizes the Board of Directors to adopt a move-in fee. Section 45–1848 permits a condominium to manage and provide for the use, rental and operation of common elements and the right to any income derived from these activities, "except to the extent expressly prohibited by the condominium instruments, and *subject to any limitations specified therein*" (emphasis added).[9]

In our view, the trial court correctly determined that the pro rata assessment method provided in the condominium documents establishes the exclusive means for recovering common elements expenses such as those incurred by Lawrence's move-in, and thus creates a clear limitation on the Board of Directors' authority to employ alternative assessment methods. Support for this interpretation can be gleaned from the simple fact that where the drafters of the condominium documents desired added flexibility in the Board of Directors' power to levy assessments against individual unit owners, for example, in cases of owner negligence, misuse or neglect of common elements, they created the necessary authority. What WCA would have us do is judicially impose similar flexibility to permit a charge for move-in costs. However, this court lacks the power to make such an amendment to WCA's Bylaws.

While it is not possible to foresee all the needs and problems that will arise in the operation of condominium property, unit owners must be able to rely upon the Bylaws to inform them of what is contemplated, particularly with respect to an association's authority to hold them liable for the condominium's expenses. Here, the

Bylaws duly informed the unit owners of their *collective* responsibility for common elements expenses such as those incurred during a move-in. Although a move-in fee may be both necessary and desirable, under the current Bylaws the Board of Directors lacks the authority to impose a different system of assessment. Such authority must be sought through the proper channels of this "little democratic sub-society" and not the courts of this jurisdiction. *Hidden Harbour Estates, Inc. v. Norman*, 309 So.2d 180, 181–82 (Fla.Dist.Ct.App. 1975). Accordingly, the judgment below is

AFFIRMED.

---

ment for a common element expense arising, for example, from the rental of the roof patio for a private party.

**9.** WCA also implies that the move-in fee should be upheld under D.C.Code § 45–1852(b) (1981), which authorizes a condominium to make an individual assessment for common expenses "benefiting less than all of the condominium units, or caused by the conduct of less than all those entitled to occupy the same or by their licensees or invitees" to the extent the condominium documents "expressly so provide." Be-

cause the WCA Bylaws do not expressly provide for individual assessments, § 45–1852(b) does not provide any authority for the move-in fee.

Nevertheless, we recognize that § 45–1852(b) requires *express* authorization in the condominium documents before the condominium's governing body may levy assessments against individual unit owners, whereas § 45–1848, which more generally deals with a governing body's authority to collect income from any party, only requires the absence of any limitation or express prohibition in the condominium documents.