Second Division
 March 31, 1997

No. 1-95-2262

BOARD OF DIRECTORS OF 175 EAST DELAWARE ) Appeal from the
PLACE HOMEOWNERS ASSOCIATION, ) Circuit Court of
 ) Cook County.
 Plaintiff-Appellant, )
 )
 v. ) 
 )
JORGE HINOJOSA, DONNA HINOJOSA, ) 
INDEPENDENCE ONE MORTGAGE CORPORATION, ) 
NANCY LEE CARLSON, and BENJAMIN TESSLER,) Honorable
 ) Michael B. Getty,
 Defendants-Appellees. ) Judge Presiding.

 JUSTICE RAKOWSKI delivered the opinion of the court:
 Plaintiff, board of directors of 175 East Delaware Place
Homeowners Association (the Board), filed suit against defendants,
Nancy Lee Carlson and Benjamin Tessler, Jorge and Donna Hinojosa,
and Independence One Mortgage Corporation, seeking to foreclose on
a statutory lien under the Condominium Property Act (the Act) (765
ILCS 605/9(h) (West 1994)). The trial court dismissed plaintiff's
complaint. Plaintiff appeals, contending that the trial court
erred in finding the Board's no-dog rule unreasonable. For the
reasons that follow, we reverse.
 FACTS
 175 East Delaware Place was organized as a condominium in 1973
by the recording of a declaration and bylaws. The property
includes floors 45 through 92 of the John Hancock building and
contains 705 condominium units. The declaration and bylaws were
silent on the issue of pet ownership in the building. In 1976, the
Board adopted a rule allowing owners to have pets, including dogs,
only with the permission of the Board. On January 21, 1980, during
a regular board meeting, the Board adopted a rule barring unit
owners from bringing additional dogs onto the premises. In October
of 1985, defendants Nancy Lee Carlson and Benjamin Tessler
purchased a unit in the building. At this time, they signed a pet
agreement acknowledging the no-dog rule. In February of 1993,
while leasing out another one of their units, they signed the same
agreement again. In March of 1993, the no-dog rule was reincluded
in the Board's rules and regulations.
 In June of 1993, defendants Carlson and Tessler acquired a
dog. This same month, a group of owners brought suit against the
Board challenging the no-dog rule. Rodgers v. Board of Directors
of 175 East Delaware Place Homeowners Ass'n, No. 93 CH 5602. This
suit was eventually abandoned and is not part of this appeal. In
September of 1993, defendants Carlson and Tessler received notice
of a hearing for their violation of the no-dog rule. The hearing
was held on November 30, 1993, and the committee recommended to the
Board that Carlson and Tessler be ordered to remove the dog within
30 days. If the dog remained on the premises after 30 days,
defendants Carlson and Tessler should be assessed a fine of $100
per day for each day the dog remained. The Board adopted the
committee's recommendation and on January 23, 1994, began assessing
fines on defendants Carlson and Tessler. On April 20, 1994, after
Carlson and Tessler failed to pay the fines, the Board recorded a
notice and claim of statutory lien.
 In August of 1994, defendants Carlson and Tessler sold the
unit to defendants Jorge and Donna Hinojosa subject to the lien. 
In November of 1994, the Board filed the instant action seeking to
foreclose on the lien. Defendants moved to dismiss the suit
pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735
ILCS 5/2-619(a)(9) (West 1994)), claiming the Board had no
authority to adopt the no-dog rule because the rule conflicted with
the declaration and bylaws. The trial court ruled that the Board
had the power to promulgate the rule but held that the rule was
unreasonable. 
 ANALYSIS
 A. LEGAL BACKGROUND
 Condominiums are creatures of statute and, thus, any action
taken on behalf of the condominium must be authorized by statute. 
"When a controversy regarding the rights of a condominium unit
owner in a condominium arises, we must examine any relevant
provisions in the Act and the Declaration or bylaws and construe
them as a whole." Carney v. Donley, 261 Ill. App. 3d 1002, 1008
(1994).
 A condominium is an interest in real estate created by statute
that gives each owner an interest in an individual unit as well as
an undivided interest in common elements. Administration and
operation of the condominium are vested in the condominium
association, which is comprised of all unit owners. The
administration is exercised through the board of directors, which
is elected by the owners. In addition to the Act, the operation
and administration of the condominium are governed by three
principal documents. These are the declaration, bylaws, and board
rules and regulations. The declaration and bylaws form the basic
framework of the administration, and the day-to-day operations are
managed by board rules and regulations.
 A condominium comes into being by the recording of a
declaration. The declaration is prepared and recorded by either
the developer or association. The Act defines the declaration as
the "instrument by which the property is submitted to the
provisions of [the] Act." 765 ILCS 605/2(a) (West 1994). Its
primary function is to provide a constitution for the condominium--
to guide the condominium development throughout the years. The
declaration contains the property's legal description, defines the
units and common elements, provides the percentage of ownership
interests, establishes the rights and obligations of owners, and
contains restrictions on the use of the property. R. Otto,
Illinois Act in Condominium Titles, in Illinois Condominium Law 
1.15, at 1-27 (Ill. Inst. for Cont. Legal Educ. 1994). All
restrictions contained in the declaration are covenants that run
with the land and bind each subsequent owner. They are given a
strong presumption of validity. M. Kurtzon, Representing the
Condominium Association, in Illinois Condominium Law  10.19, at
10-17 (Ill. Inst. for Cont. Legal Educ. 1994). Section 4 of the
Act details what elements must be contained in the declaration. 
Paragraph (i) states: "Such other lawful provisions not
inconsistent with the provisions of this Act as the owner or owners
may deem desirable in order to promote and preserve the cooperative
aspect of ownership of the property and to facilitate the proper
administration thereof." 765 ILCS 605/4(i) (West 1994).
 The second document is the bylaws, which deal with
administration and procedural matters concerning the property. 
Bylaws may be embodied in the declaration or be a separate
document. In either case, the bylaws must be recorded with the
declaration. 765 ILCS 605/17(a) (West 1994). Should the bylaws
conflict with the declaration, the declaration prevails. Section
18 of the Act sets forth certain provisions that shall be included
in the bylaws. Relevant to the issue before us is paragraph (k),
which states: "[R]estrictions on and requirements respecting the
use and maintenance of the units and the use of the common
elements, not set forth in the declaration, as are designed to
prevent unreasonable interference with the use of their respective
units and of the common elements by the several unit owners." 765
ILCS 605/18(k) (West 1994).
 The third item governing condominium conduct is the board
rules and regulations. Section 18.4 of the Act deals with powers
and duties of the board and provides that the board may:
 "[A]dopt and amend rules and regulations
 covering the details of the operation and use
 of the property, after a meeting of the unit
 owners called for the specific purpose of
 discussing the proposed rules and regulations." 
 765 ILCS 605/18.4(h) (West 1994).
Under this rule, "a board of managers may not take any action that
is beyond the authority granted it under the condominium
instruments and the Condominium Property Act." 765 ILCS 605/18.4,
Historical & Practice Notes, at 129 (West 1993). The board shall
exercise for the association all powers, duties, and authority
vested in the association by law or the condominium documents. It
generally has broad powers and its rules govern the requirements of
day-to-day living in the association. Board rules must be
objective, evenhanded, nondiscriminatory, and applied uniformly. 
See J. Shifrin, Cooperative, Condominium, and Homeowners'
Association Litigation, in Real Estate Litigation 11.20, at 11-17
(Ill. Inst. for Cont. Legal Educ. 1994).
 B. POWER OF THE BOARD TO PROMULGATE THE NO-DOG RULE
 As noted, pursuant to section 18.4 the Board has the power to
adopt rules and regulations. Section 18(k) does discuss
restrictions that shall be included in the bylaws. However, this
provision merely gives the association the authority to include
restrictions in the condominium instruments that will clothe the
restrictions with a strong presumption of validity and make them
less susceptible to attack. The provision does not state that if a
restriction is not contained in the bylaws it will be
unenforceable. We thus conclude that the Board's no-dog rule is
not in conflict the Act.
 The 175 East Delaware Place declaration and bylaws do not make
any reference to pet ownership or dogs, in particular. As to the
Board's powers, the declaration provides:
 "The Board, may adopt such reasonable rules and
 regulations as it may deem advisable for the
 maintenance, conservation and beautification of
 the Property, and for the health, comfort,
 safety and general welfare of the Owners and
 occupants of the Property. Written notice of
 such rules and regulations shall be given to
 all Owners and Occupants and the entire
 Property shall at all times be maintained
 subject to such rules and regulations."
The declaration clearly gives the Board authority to promulgate
rules regarding use of and restrictions on the use of units. 
Because the Board is authorized to promulgate reasonable rules for
the general welfare of the owners and the declaration is silent on
the issue of dog ownership, the instant rule does not conflict with
either the declaration or the bylaws.
 Courts that have addressed the issue have held that dogs may
be prohibited or restricted by provisions in the declaration or
bylaws. See Nahrstedt v. Lakeside Village Condominium Ass'n, 8
Cal. 4th 361, 878 P.2d 1275, 33 Cal. Rptr. 2d 63 (1994)
(restriction in recorded declaration barring all pets except fish
and birds enforceable unless unreasonable); Chateau Village North
Condominium Ass'n v. Jordan, 643 P.2d 791 (Colo. App. 1982) (rule
barring all pets appended to bylaws and recorded enforceable);
Parkway Gardens Condominium Ass'n v. Kinser, 536 So. 2d 1076 (Fla.
App. 1988) (board rule barring pets unenforceable because
declaration allowed them); Zeskind v. Jockey Club Condominium
Apartments, Unit II, Inc., 468 So. 2d 1021 (Fla. App. 1985) (no-pet
rule in declaration enforceable); Wilshire Condominium Ass'n v.
Kohlbrand, 368 So. 2d 629 (Fla. App. 1979) (restriction in
declaration barring replacement of lap dogs enforceable); Johnson
v. Keith, 368 Mass. 316, 331 N.E.2d 879 (1975) (board rule barring
all pets unenforceable; rule must be included in bylaws); Noble v.
Murphy, 34 Mass. App. 452, 612 N.E.2d 266 (1993) (restriction
barring all pets incorporated in original recorded documents
enforceable); but see Dulaney Towers Maintenance Corp. v. O'Brey,
46 Md. App. 464, 418 A.2d 1233 (1980) (board rule limiting number
of pets enforceable). The issue before us, however, is whether the
Board may promulgate a rule restricting dog ownership. This issue
has not been addressed in Illinois.
 Apple II Condominium Ass'n v. Worth Bank & Trust Co., 277 Ill.
App. 3d 345 (1995), addresses use restrictions under the Act. In
Apple II, we set forth standards for evaluating such restrictions
and adopted the analysis set forth in Hidden Harbour Estates, Inc.
v. Basso, 393 So. 2d 637 (Fla. App. 1981). We differentiated use
restrictions that are contained in the declaration or bylaws from
those promulgated by board rule. The restrictions in the first
category "are clothed in a very strong presumption of validity and
will not be invalidated absent a showing that they are wholly
arbitrary in their application, in violation of public policy, or
that they abrogate some fundamental constitutional right. ***
'[R]easonableness' is not the appropriate test for such
restrictions." Apple II, 277 Ill. App. 3d at 250-51. However,
when the board promulgates a rule restricting the use of property,
the second category, "the board must affirmatively show the use it
wishes to prohibit or restrict is 'antagonistic to the legitimate
objectives of the condominium association.' " Apple II, 277 Ill.
App. 3d at 351, quoting Basso, 393 So. 2d at 640. Thus, "[w]hen
such a rule [use restriction] is adopted by the board alone or
requires the board to exercise discretion, we will scrutinize the
restriction and uphold it only if it is affirmatively shown to be
reasonable in its purpose and application." Apple II, 277 Ill.
App. 3d at 352.
 Based on the above, we conclude that the Board had the power
to promulgate a reasonable no-dog rule.
 C. REASONABLENESS OF RULE
 Because the rule was promulgated by the Board, it is not
clothed with a strong presumption of validity. Thus, we must
carefully scrutinize the rule to determine if it is reasonable in
its purpose and application. Because the facts are not in dispute,
the issue is one of law.
 In Dulaney Towers Maintenance Corp. v. O'Brey, 46 Md. App.
464, 418 A.2d 1233 (1980), the court stated:
 "The rationale for allowing the placing of
 restrictions in, or the barring of pets by way
 of, house rules is based on potentially
 offensive odors, noise, possible health
 hazards, clean-up and maintenance problems, and
 the fact that pets can and do defile hallways,
 elevators, and other common areas." Dulaney
 Towers Maintenance, 46 Md. App. at 466, 418
 A.2d at 1235.
 The above factors, in conjunction with the specific facts of
this case, lead us to conclude the Board's no-dog rule is a
reasonable exercise of the Board's rule-making power. The John
Hancock building is located in a very urban and densely populated
area of the city where parks, grass, and other recreational areas
for dogs are scarce. The 705 residences are located on the 45th
through 92nd floors. In order to take a dog out, one must access
elevators and descend anywhere from 45 to 92 floors.
 The rule was adopted to prevent possible injury or harm. The
original purpose for promulgating the rule was due to an incident
in which one dog killed another dog in the building. The Board had
tried less restrictive measures to regulate dogs in the past. 
However, these measures did not cure or alleviate what the Board
reasonably perceived to be potential and real problems. It should
also be noted that when the no-dog rule was adopted, owners were
allowed to retain existing dogs. The rule only prohibited
additional and/or replacement dogs.
 Because the Board applied the rule to all owners and the
purpose for the rule was rational, we conclude that the rule is
reasonable under the specific facts of this case.
 CONCLUSION
 Based on the foregoing, we reverse the decision of the circuit
court of Cook County and remand for further proceedings.
 Reversed and remanded.
 McNAMARA and SOUTH*, JJ., concur.

*Justice South has replaced Justice Egan on the panel.