THOMAS P. WELDY ET AL. *v.* NORTHBROOK
CONDOMINIUM ASSOCIATION,
INC., ET AL.
(SC 17503)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 8—officially released September 5, 2006

*Ari J. Hoffman*, for the appellants (defendants).

*Thomas P. Weldy*, pro se, and for the appellee Elizabeth C. Weldy (plaintiffs).

ZARELLA, J. The sole issue in this certified appeal is whether a resolution adopted by the board of directors of a condominium association providing that leashes or restraints for household pets shall not exceed twenty feet in length constitutes an illegal amendment of the condominium declaration, which provides that all household pets shall be restrained by leash or other comparable means. The plaintiffs, Thomas P. Weldy and Elizabeth C. Weldy, brought an action to enjoin the defendants, Northbrook Condominium Association, Inc. (association), and the association's five member board of directors (board), from enforcing the resolution. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court, which reversed the trial court's judgment. *Weldy* v. *Northbrook Condominium Assn., Inc.*, 89 Conn. App. 581, 589, 874 A.2d 296 (2005). On appeal to this court, the defendants claim that the board did not act beyond the scope of its authority in adopting the resolution because it constituted a clarification of, rather than an amendment to, the pet restraint provision in the declaration and thus did not require approval by a two-thirds vote of the unit owners and mortgagees. We agree and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The plaintiffs own a unit in a development known as Northbrook of Monroe, an Expandable Condominium (condominium). . . .

"Article nine of the condominium's declaration governs 'use, purposes and restrictions' of the condominium property. [Article] 9 (e) addresses pet ownership and provides in relevant part that all 'dogs, cats or

household pets shall be restrained by leash or other comparable means and shall be accompanied by an owner at all times. . . .' [Article] 9 (*l*) confers on the board 'the power to make such regulations as may be necessary to carry out the intent of [the] use restrictions. . . .' Pursuant to § 4 (b) (5) of the condominium's bylaws, the board possesses the power to adopt and amend 'rules and regulations covering the details of the operation and use of the property, provided, however, that those rules and regulations contained in the [d]eclaration shall be amended in the manner provided for amending the [d]eclaration.' Article eighteen of the declaration provides that the declaration may be amended only on the vote of two thirds of the unit owners and mortgagees of the condominium.

"On June 27, 2003, the board, by letter, informed the condominium's owners and residents of 'new regulations to the pet rules.' The board cited the previously quoted language from [article] 9 (e) of the declaration and stated that the word 'leash' was not defined. It further noted 'instances where pets have caused injury to other pets' and the board's 'opinion [that] leashes that exceed twenty feet in length do not permit owners to control their dogs sufficiently to ensure the safety of other pets and/or unit owners.' According to the letter, the board, therefore, had adopted an 'additional clarification pertaining to pets.' The 'clarification' provided in relevant part that '[l]eashes or comparable restraints for dogs, cats or household pets shall not exceed [twenty] feet in length.'

"The plaintiffs own a nine and one-half year old black Labrador retriever. Prior to June 27, 2003, the plaintiffs played ball and Frisbee with and otherwise exercised their dog in a common area behind their unit. To do so, they used a leash that was seventy-five feet in length.

"On July 28, 2003, the plaintiffs filed this action, seeking to enjoin the defendants from enforcing the pur-

ported clarification and requesting a finding that the clarification was made without legal authority, is illegal and is of no force or effect. After the plaintiffs' motion for a temporary injunction was denied, both parties filed motions for summary judgment. After a hearing, the court . . . granted the defendants' motion and denied the plaintiffs' motion. The court agreed with the defendants that the twenty foot leash requirement constituted a clarification of an existing rule in the declaration rather than an amendment to the rules and, therefore, that the board had not exceeded its authority. It considered the board's action to have been taken properly pursuant to [article] 9 (*l*) of the declaration, insofar as it 'implement[ed] the intent contained in [article 9 (e)] that animals be "restrained animals." ' " Id., 582–84.

The plaintiffs appealed to the Appellate Court from the trial court's judgment. The Appellate Court reversed and remanded the case with direction to render judgment for the plaintiffs, concluding that the twenty foot limitation constituted an improper amendment to the condominium declaration in violation of General Statutes § 47-245 (b) of the Common Interest Ownership Act; see generally General Statutes § 47-200 et seq.; and in violation of the provision in the condominium declaration permitting amendments only upon approval by two thirds of all unit owners and mortgagees. See *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 89 Conn. App. 589. The Appellate Court determined that the twenty foot restriction was an amendment to, rather than a clarification of, an ambiguous declaration provision because it added "more particular restrictions" to the leash provision in the declaration defining the rights of condominium owners to have their pets in a common area. Id., 587. We granted the defendants' petition for

certification to appeal[1] from the judgment of the Appellate Court.

On appeal, the defendants claim that the trial court properly determined that the board did not exceed the scope of its authority in adopting the leash restriction. The defendants contend that the intent of the policy in article 9 (e) of the declaration is to promote a safe and nonintimidating environment for unit owners and their guests,[2] and that a dog on an excessively long leash cannot be restrained properly in the physically restricted context of a condominium development. Accordingly, the leash restriction gives meaning to, and acts in concert with, the declaration provision. The plaintiffs respond that, because leashes are commonly sold in lengths of thirty to fifty feet, the board in effect illegally amended the declaration by prohibiting leashes more than twenty feet in length. The plaintiffs argue, therefore, that the leash restriction cannot be enforced. We agree with the defendants that the board acted within the scope of its authority in adopting the restriction.

We begin our analysis by setting forth the applicable standard of review. Practice Book § 17-49 provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion

[1] The following issue was certified for review: "Did the Appellate Court properly limit the extent to which a condominium's board of directors is empowered to adopt rules and regulations?" *Weldy* v. *Northbrook Condominium Assn., Inc.*, 275 Conn. 923, 883 A.2d 1253 (2005).

[2] In an affidavit dated November 25, 2003, Steve Robifker, president of the board, stated that the intent of the pet policy in article 9 (e) of the declaration "is to promote a safe and non-intimidating environment for unit owners and their guests," and that the board had voted unanimously on June 27, 2003, to adopt the leash restriction to clarify the declaration's pet policy after "multiple dog related incidents . . . ."

for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, 277 Conn. 21, 30–31, 889 A.2d 785 (2006). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Aselton* v. *East Hartford*, 277 Conn. 120, 130, 890 A.2d 1250 (2006). "[O]ur review of the trial court's decision to grant the . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Ace Equipment Sales, Inc.* v. *Buccino*, 273 Conn. 217, 227, 869 A.2d 626 (2005).

"When a court is called upon to assess the validity of [an action taken] by a board of directors, it first determines whether the board acted within its scope of authority and, second, whether the [action] reflects reasoned or arbitrary and capricious decision making." *Beachwood Villas Condominium* v. *Poor*, 448 So. 2d 1143, 1144 (Fla. App. 1984); cf. *Lamden* v. *La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal. 4th 249, 256, 980 P.2d 940, 87 Cal. Rptr. 2d 237 (1999). Because the plaintiffs do not contend that the leash restriction itself is unreasonable, the only issue before the court is whether the board exceeded the scope of its authority in adopting the restriction. We therefore turn to an examination of the relevant statutory provisions.

Condominium developments are of relatively recent origin and provide a unique type of shelter that affords some of the benefits of property ownership without the

corresponding burdens. *Gentry* v. *Norwalk*, 196 Conn. 596, 603, 494 A.2d 1206 (1985). The statutory scheme in Connecticut governing condominium developments is the Common Interest Ownership Act (act).[3] See generally General Statutes § 47-200 et seq. The act "is a comprehensive legislative scheme regulating all forms of common interest ownership that is largely modeled on the Uniform Common Interest Ownership Act." *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 447, 541 A.2d 1226 (1988). See generally Unif. Common Interest Ownership Act of 1994, 7 U.L.A. 835 (2005). The act addresses "the creation, organization and management of common interest communities and contemplates the voluntary participation of the owners. It entails the drafting and filing of a declaration describing the location and configuration of the real property, development rights, and restrictions on its use, occupancy and alienation; General Statutes §§ 47-220, 47-224; the enactment of bylaws; General Statutes § 47-248 . . . the establishment of a unit owners' association [to manage the condominium community]; General Statutes § 47-243; and an executive board to act on . . . behalf [of the association]. General Statutes § 47-245. It anticipates group decision-making relating to the development of a budget, the maintenance and repair of the common elements, the placement of insurance, and the provision for common expenses and common liabilities. General Statutes §§ 47-244, 47-245, 47-255, 47-249." *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326–27, 544 A.2d 1207 (1988).

Several provisions of the act are of particular significance in the present case. Except in certain designated

---

[3] The act was passed in 1983 "to remedy problems arising from unconscionable lease agreements in condominiums and other residential common interest communities created prior to 1984." *Celantano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 597, 830 A.2d 164 (2003).

situations, a declaration may be amended "only by vote or agreement of unit owners of units to which at least sixty-seven per cent of the votes in the association are allocated . . . ." General Statutes § 47-236 (a). A condominium association also is empowered, subject to the declaration provisions, to "[a]dopt and amend bylaws and rules and regulations"; General Statutes § 47-244 (1); and to "[r]egulate the use . . . of common elements . . . ." General Statutes § 47-244 (6). The condominium's board of directors is not permitted, however, to amend the declaration on behalf of the association. See General Statutes § 47-245 (b).

With the foregoing statutory framework as a backdrop, we turn to an examination of the relevant condominium documents in order to determine whether the board was empowered to adopt the leash restriction for the purpose of clarifying the declaration. This issue presents a question of law that we review *de novo*. See, e.g., 15A Am. Jur. 2d 780, Condominiums and Cooperative Apartments § 8 (2000).

The board adopted the leash restriction pursuant to article 9 (e) and (*l*) of the condominium declaration and § 4 (b) (5) of the condominium bylaws. Article 9 (e) provides in relevant part: "All . . . dogs, cats or household pets shall be restrained by leash or other comparable means and shall be accompanied by an owner at all times." Article 9 (*l*) vests the board with authority "to make such regulations as may be necessary to carry out the intent of [the] use restrictions [in the declaration]." Section 4 (b) (5) of the condominium bylaws authorizes the board to adopt and amend "rules and regulations covering the details of the operation and use of the property . . . ."

The leash restriction that the board adopted on June 27, 2003,[4] specifically provides: "Leashes or comparable

---

[4] In a letter to unit owners and residents, the board announced that it had adopted the leash restriction for the following reasons: (1) the word

restraints for dogs, cats or household pets shall not exceed [twenty] feet in length. Pets must be materially attached to the owner in order to be restrained. It is the responsibility of every owner of a cat, dog, or other household pet to restrain that pet while in the [c]ommon [a]rea. Further, it is the specific responsibility of the owner of any pet with an anti-social personality to avoid a conflict with other residents or pets in the community."

Because the issue on appeal is one of first impression, we look for guidance to other jurisdictions that have considered the limits of a board's delegated authority to enact regulations governing a condominium community. With respect to the interpretation of declaration provisions, several jurisdictions have recognized that the declaration is the condominium association's "constitution." *Beachwood Villas Condominium* v. *Poor*, supra, 448 So. 2d 1145; accord *Schaefer* v. *Eastman Community Assn.*, 150 N.H. 187, 191, 836 A.2d 752 (2003). "Generally, declarations and other governing documents contain broad statements of general policy with due notice that the board of directors is empowered to implement these policies and address day-to-day problems in the [association's] operation. . . . Thus, the declaration should not be so narrowly construed so as to eviscerate the association's intended role as the governing body of the community. Rather, a broad view of the powers delegated to the association is justified by the important role these communities play in maintaining property values and providing municipal-like services . . . . If unable to act, the common prop-

---

"leash" was undefined in the declaration; (2) the board had the responsibility to protect the entire community, including people and pets, from other pets that might have antisocial personalities; (3) there had been several instances in which pets had caused injury to other pets; and (4) in the opinion of the board, leashes that exceeded twenty feet in length did not permit owners to control their dogs sufficiently to ensure the safety of other pets and unit owners.

erty may fall into disrepair. . . . [2 Restatement (Third), Property, Servitudes § 6.4, p. 90, comment (a) (2000)] . . . .

"Because an association's power should be interpreted broadly, the association, through its appropriate governing body, is entitled to exercise all powers of the community except those reserved to the members. [Id., § 6.16, p. 289]." (Citations omitted; internal quotation marks omitted.) *Schaefer* v. *Eastman Community Assn.*, supra, 150 N.H. 191.

This broad view of the powers delegated to the condominium's board of directors is consistent with the principle "inherent in the condominium concept . . . that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to [the] use of condominium property than may be existent outside the condominium organization." *Hidden Harbour Estates, Inc.* v. *Norman*, 309 So. 2d 180, 181–82 (Fla. App. 1975).

Accordingly, the standard of review most commonly employed in reviewing a board's authority to adopt rules or regulations is that, "provided . . . a board-enacted rule does not contravene either an express provision of the declaration or a right reasonably inferable therefrom, it will be found valid, within the scope of the board's authority. This test . . . is fair and functional; it safeguards the rights of unit owners and preserves unfettered the concept of delegated board management." *Beachwood Villas Condominium* v. *Poor*, supra, 448 So. 2d 1145; cf. *Meadow Bridge Condominium Assn.* v. *Bosca*, 187 Mich. App. 280, 282, 466 N.W.2d

303 (1990) ("a rule or regulation is a tool to implement or manage existing structural law, while an amendment presumptively changes existing structural law" [internal quotation marks omitted]).

Applying these principles in the present case, we conclude that the twenty foot leash limitation is not more restrictive than the declaration but simply implements the declaration's expressed intent that household pets brought to the common areas of the property be restrained properly and controlled by their owners at all times. An excessively long leash would not achieve this objective within the limited confines of the walkways, parking lots, landscaped and recreational areas that typically comprise the common elements of a condominium development because a pet attached to a seventy-five foot leash would have the ability to stray far from its owner, especially if the owner's attention was diverted from the pet. This could endanger persons walking between the owner and the pet as well as persons and vehicles moving in a parking lot or accessway that must take evasive action to avoid a darting animal. Consequently, the leash restriction does not contravene an express provision of the declaration but is a means of implementing the policy embodied therein by increasing the likelihood that a pet will remain under its owner's control, thereby contributing to "a safe and non-intimidating environment for unit owners and their guests."

This conclusion finds support in other cases in which courts have determined that the board of directors acted within the scope of its authority in regulating an activity specifically addressed in the declaration or bylaws. See, e.g., *O'Buck* v. *Cottonwood Village Condominium Assn., Inc.*, 750 P.2d 813, 815–17 (Alaska 1988) (board acted within scope of authority in banning television antennas on buildings because declaration authorized board to adopt rules and regulations governing use

of common areas, including roofs and walls of buildings, and to require action by owners to preserve uniform exterior building appearance); *Meadow Bridge Condominium Assn. v. Bosca*, supra, 187 Mich. App. 281–83 (board empowered to adopt regulation prospectively prohibiting new dogs because bylaws provided that no animals could be maintained by owner without specific approval by association, and bylaws authorized association "to adopt such additional rules and regulations with respect to animals as it may deem proper" [internal quotation marks omitted]).

Correspondingly, the present case is distinguishable from cases in which courts have concluded that the board was not empowered to act because the regulation in question conflicted with an express provision in the declaration. See, e.g., *In re 560 Ocean Club, L.P.*, 133 B.R. 310, 317–18 (Bankr. D.N.J. 1991) (board not authorized to adopt regulation requiring minimum of ninety days during summer months and thirty days at other times for short-term leases because declaration merely granted board power to approve or disapprove leases, not to restrict their duration); *Westbridge Condominium Assn., Inc. v. Lawrence*, 554 A.2d 1163, 1164, 1167 (D.C. 1989) (board exceeded scope of authority in imposing move-in fee on unit owner because declaration provided only one method for assessing common elements expenses, consisting of pro rata allocation of costs among all unit owners, thereby limiting board's power to impose move-in fee under alternative method of assessment); *Mohnani v. La Cancha Condominium Assn., Inc.*, 590 So. 2d 36, 38 (Fla. App. 1991) (board not empowered to adopt regulation that owner could not lease unit for two years following acquisition because regulation contravened declaration provision and rights reasonably inferable therefrom that owners could lease units upon board approval within thirty days following board's receipt of written notice from

owner of intent to lease); *Thanasoulis* v. *Winston Towers 200 Assn., Inc.*, 110 N.J. 650, 659–60, 542 A.2d 900 (1988) (board acted beyond scope of authority in adopting rule charging nonresident owners higher monthly parking fees than resident owners because master deed provided that right of unit owner to use common elements, including parking spaces, was indivisible from owner's interest in condominium itself, and rule thus constituted "change [in] a unit" within meaning of relevant statute by severing owner's property right to parking space [internal quotation marks omitted]); *Ronaldson* v. *Countryside Manor Condominium Board of Managers*, 189 App. Div. 2d 808, 808–809, 592 N.Y.S.2d 459 (board acted outside scope of authority in adopting regulation permitting unit owners to build six foot fences to enclose property at rear of respective units because declaration provided that common elements included entire property, including enclosed areas), appeal dismissed, 82 N.Y.2d 706, 619 N.E.2d 663, 601 N.Y.S.2d 585 (1993); *Sully Station II Community Assn., Inc.* v. *Dye*, 259 Va. 282, 285, 289, 525 S.E.2d 555 (2000) (board exceeded authority in adopting parking policy under which two reserved parking spaces in common area were assigned to owners of nongaraged units because policy constituted licensing of portion of common area, and declaration granted association right to license those parking spaces to members only on uniform, nonpreferential basis).

The plaintiffs nonetheless argue that the leash restriction is inconsistent with the relevant declaration provision because the twenty foot limitation redefines and changes the everyday meaning of the word "leash," a term applied to restraints sold commercially in lengths of thirty, fifty and even seventy-five feet. We disagree.

Webster's Third New International Dictionary defines the word "leash" as "a thong, cord or chain attached to an animal's collar . . . and held in the hand for the

purpose of leading, checking, or controlling the . . . animal or fastened to an object to secure or tether it . . . ." The twenty foot leash restriction does not add to or change the general provision of the declaration that pets must be controlled in the common areas of the property, nor does it redefine the everyday meaning of the word "leash." It merely ensures that a leash will be more likely to achieve its purpose in a high density residential setting because it will prevent a pet from straying more than twenty feet from its owner. See *Meadow Bridge Condominium Assn.* v. *Bosca,* supra, 187 Mich. App. 282 (regulation prospectively prohibiting new dogs on condominium property did not constitute amendment because it was "not inconsistent with the original bylaw and [did] nothing to change the general rule"). The twenty foot leash restriction is therefore consistent with the declaration.

The plaintiffs also argue that the leash restriction deprives unit owners of a right reasonably inferred from the language of the declaration to restrain their pets on a longer leash. See, e.g., *Beachwood Villas Condominium* v. *Poor,* supra, 448 So. 2d 1145 (board rule invalid if in contravention of right reasonably inferable from provision of declaration). The plaintiffs argue that the principle that communal living requires individuals to give "fair consideration . . . to the rights and privileges of all owners and occupants" of the community; *Dulaney Towers Maintenance Corp.* v. *O'Brey,* 46 Md. App. 464, 466, 418 A.2d 1233 (1980); does not apply in this case because they exercise their dog in a secluded area of the property and thus do not interfere with other persons or animals, even though the leash they use is seventy-five feet in length. This claim has no merit.

We first note the obvious fact that the declaration provision is restrictive in nature because it seeks to protect unit owners from unnecessary inconvenience

and annoyance by unrestrained pets through the imposition of a physical restraint *and* by requiring that pets be accompanied by their owners at all times. We also recognize that leashes are sold in varying lengths. The fact that the plaintiffs' dog does not interfere with others has no bearing, however, on whether a reasonable inference may be drawn from the declaration that unit owners have a right to use a leash of virtually any length when permitting their pets to walk, run or otherwise traverse across and exercise within the common areas of the property. At some point, depending on the circumstances, a leash beyond a certain length ceases to function as an effective restraint. Similarly, to the extent that the declaration mandates that a pet be "accompanied" by its owner, a pet that has wandered seventy-five feet from its owner, even if attached to a very long leash, can hardly be said, in most situations, to be "accompanied by" and under the control of the owner. In the present case, the board determined that, in light of the physical limitations of the condominium setting in question, a leash of more than twenty feet could not perform as intended. Accordingly, the plaintiffs' claim must fail because the condominium declaration, which seeks to impose a measure of control over pets on the property, does not support an inference that a leash of any length can fulfill its anticipated purpose merely because one end of the leash is attached to the collar of a pet and the other is held by the owner.

Two cases on which the plaintiffs rely, namely, *In re 560 Ocean Club, L.P.*, and *Mohnani*, are inapposite. In the former case, the court determined that the board of directors acted beyond the scope of its authority when it imposed a requirement that all short-term leases be at least ninety days during the summer months and thirty days during other times because the declaration did not address restrictions on the duration of leases

but merely granted the board authority to approve or disapprove the leases. *In re 560 Ocean Club, L.P.*, supra, 133 B.R. 317–18. In the latter case, the court concluded that the board exceeded its authority in adopting a regulation that owners could not lease their units for a period of two years from the date on which ownership was acquired because the regulation was inconsistent with the declaration and rights reasonably inferable therefrom. See *Mohnani* v. *La Cancha Condominium Assn., Inc.*, supra, 590 So. 2d 38. The declaration specified that owners could lease their units following written notice to the board of their intent to do so, and that the board was required within thirty days to approve the transaction or to furnish a lessee approved by the association, thus conceivably allowing an owner to lease the unit within thirty days of acquiring ownership. See id. These cases are distinguishable because the regulations adopted by the respective boards clearly conflicted with the governing declaration provisions. That is not the situation in the present case for all of the reasons that we previously have discussed. We therefore conclude that the board acted within the scope of its authority in adopting the resolution restricting the length of leashes to no more than twenty feet pursuant to article 9 (*l*) of the condominium declaration.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.