******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THE NEIGHBORHOOD ASSOCIATION, INC. *v.* JILL M.
LIMBERGER ET AL.
(SC 19509)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued November 5, 2015—officially released April 26, 2016*

*Keith Yagaloff*, for the appellant (named defendant).

*Kristie Leff*, with whom was *Ronald J. Barba*, for
the appellee (plaintiff).

*Opinion*

McDONALD, J. Under Connecticut's Common Interest Ownership Act (act), General Statutes § 47-200 et seq., the executive board of a common interest community may commence an action against a unit owner to foreclose a lien for common charges under specified conditions, including that it either has voted to institute the particular foreclosure proceeding or has previously adopted a standard foreclosure policy under which that foreclosure would be authorized. General Statutes (Rev. to 2011) § 47-258 (m) (3).[1] The present case requires us to determine whether a standard foreclosure policy is a "rule" subject to the act's notice and comment requirements and, if so, whether the failure to adhere to those procedural requirements is a jurisdictional defect. The defendant Jill M. Limberger[2] appeals[3] from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, The Neighborhood Association, Inc. The dispositive issue on appeal is whether the trial court properly concluded that the plaintiff's standard foreclosure policy is an "internal business operating procedure"—not a rule—and, thus, not subject to the notice and comment requirements for a rule. See General Statutes § 47-261b. We conclude that the standard foreclosure policy is a rule and that the rule-making requirements are jurisdictional. Accordingly, we reverse the judgment of the trial court with direction to dismiss the plaintiff's action.

The record reveals the following undisputed facts and procedural history. The defendant owns a condominium unit in The Neighborhood, a common interest community subject to the provisions of the act. The plaintiff is the homeowner's association for The Neighborhood. The plaintiff acts through its executive board (board), which is elected by the plaintiff's members. The board's powers are defined by "The Declaration of The Neighborhood" (declaration). The declaration gives the board the power to, inter alia, adopt and amend bylaws, rules and regulations, collect assessments for common expenses, engage in litigation, and impose late fees and other charges.

In 2010, the board adopted a "Standard Foreclosure Policy" by way of resolution (2010 policy). That policy authorized the plaintiff's attorney to commence a foreclosure action if, within thirty days of a written demand, (1) the unit owner failed to either bring his or her account current or agree to and follow a payment plan that would bring the account current within six months, and (2) the unit owner owed a sum equal to or greater than two months common charges. According to the plaintiff's property manager, this policy was solely an "internal document . . . ."

On advice of new counsel, in March, 2011, the board voted to adopt a different policy (2011 policy). The 2011

policy provides that it is being adopted as the plaintiff's
" 'standard collection policy' pursuant to . . . § 47-258
(m)." The 2011 policy differs in various respects from
the 2010 policy. Like its predecessor, however, the 2011
policy authorizes the board's attorney to commence a
foreclosure action if a unit owner owes an amount equal
to or greater than two months common charges. The
policy further provides, inter alia: "Homeowners are
expected to pay their monthly common expenses on
the first of each month and to maintain a zero balance.
If there is a balance due equal to two . . . months of
common expenses it will be referred to counsel for
foreclosure. . . . [H]omeowners will be responsible
for any attorney's fees and collection costs incurred to
collect or in attempting to collect outstanding [c]om-
mon [e]xpenses including a [$225] attorney's fee for the
initial demand letter which amount may change from
time to time." The policy then prescribes the order in
which any payments received will be applied to the
various components of the debt, with the oldest
monthly common expenses paid first, interest paid sec-
ond, late fees paid third, outstanding fines paid fourth,
special assessments paid fifth, and attorney's fees and
other collection costs paid last. The board neither noti-
fied unit owners that the policy would be considered at
its March, 2011 meeting nor thereafter gave unit owners
notice that it had adopted the policy.

The plaintiff subsequently commenced the present
action against the defendant, seeking to foreclose a
statutory lien for allegedly delinquent common
expenses, attorney's fees, and other costs. The defen-
dant filed a motion to dismiss the action on the ground
that the court lacked subject matter jurisdiction due
to, inter alia, the plaintiff's failure either to vote to
commence a foreclosure action against the defendant's
unit or to adopt a standard foreclosure policy pursuant
to the notice and comment requirements of the act. The
plaintiff opposed the motion, claiming that its policy
was an internal business operating procedure, not a
rule, and therefore it was not subject to the notice and
comment procedures for rules.

After an evidentiary hearing, the trial court, *Sfer-
razza, J.*, denied the defendant's motion to dismiss.
The court concluded that the board was not required
to give unit owners notice of the policy because the
policy was an internal business operating procedure.
The court rejected the literal meaning of rule as defined
in the act, which includes a policy that governs the
"conduct of persons"; General Statutes § 47-202 (31);
reasoning that such an "expansive interpretation . . .
would subsume the exemption of [internal business
operating procedures] because every operating proce-
dure entails the regulation of persons to some extent."
Instead, the trial court adopted a narrower interpreta-
tion under which "the definition of 'rule' is aimed at
the conduct of residents and visitors of condominium

units and the use and appearance of the physical facility . . . ."

The case then proceeded to trial before the court. Following trial, the court, *Hon. Lawrence C. Klaczak*, judge trial referee, rendered judgment for the plaintiff and, subsequently, the court, *Sferrazza, J.*, entered a judgment of foreclosure by sale. This appeal followed.

The defendant's dispositive claim is that the trial court improperly denied her motion to dismiss because it improperly concluded that the board's policy is an internal business operating procedure rather than a rule. Specifically, the defendant contends that her interpretation is supported by the following four factors: (1) the plain meaning of the words "adopt" and "policy"; (2) comments to the Uniform Common Interest Ownership Act of 2008 (uniform act), on which our act is modeled; (3) comments to the Uniform Common Interest Owners Bill of Rights Act; and (4) the purpose behind the relevant sections of the act, which she asserts is to protect unit owners. See Unif. Common Interest Ownership Act of 2008, § 1-103, comment (28), 7 U.L.A. (Pt. 1B) 246 (2009); Unif. Common Interest Owners Bill of Rights Act, § 2, comment (7), 7 U.L.A. (Pt. 1B) 189–90 (2009). In addition, the defendant contends that the failure to comply with the procedures for properly adopting a rule is a jurisdictional defect. The plaintiff responds that the trial court properly ascribed a common sense and contextual meaning to "rule." It asserts that, because its policy directs the conduct of its counsel, not unit owners and their visitors, it is an internal business operating procedure. We agree with the defendant that the policy is a rule and that failure to adopt such a rule in accordance with the notice and comment requirements is a jurisdictional defect.

Our standard of review following a trial court's ruling on a motion to dismiss is plenary as to its ultimate legal conclusion. *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014); see id., 521–24 (explaining scope of inquiry differs depending on status of record, whether evidentiary hearing is required and other considerations). In resolving the specific question in this case, we apply our well established principles of statutory construction. See General Statutes § 1-2z (setting forth plain meaning rule); *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005) ("[w]hen a statute is not plain and unambiguous, we also seek interpretive guidance from the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter").

## I

We begin with the substantive question of whether a standard foreclosure policy is a rule, because if it is

not, there clearly is no potential jurisdictional defect. To answer that question, we examine the relevant provisions of the act.

Section 47-258 addresses common interest community liens and their enforcement. An association has a statutory lien on a unit for common charges and other assessments attributable to the unit imposed against its unit owner. General Statutes (Rev. to 2011) § 47-258 (a). Such liens may be foreclosed "in like manner as a mortgage on real property." General Statutes (Rev. to 2011) § 47-258 (j). General Statutes (Rev. to 2011) § 47-258 (m) prescribes three conditions that must be met before such an action may be commenced: "An association may not commence an action to foreclose a lien on a unit under this section unless: (1) The unit owner, at the time the action is commenced, owes a sum equal to at least two months of common expense assessments based on the periodic budget last adopted by the association . . . (2) the association has made a demand for payment in a record . . . and (3) the executive board has either voted to commence a foreclosure action specifically against that unit or has adopted a standard policy that provides for foreclosure against that unit." Section 47-258 does not, however, prescribe the procedure for adopting a standard foreclosure policy.

What procedure, if any, is required under the act turns on the meaning of General Statutes § 47-261b and the relevant definitions of the key terms therein. The principal subject of § 47-261b is unit owners' association (association) rules. Subsection (a) of § 47-261b requires a board to give unit owners notice of its intention to adopt, amend or repeal a rule as well as the opportunity to comment on the proposed change. Subsection (b) requires an association to give unit owners notice of a board's subsequent action on the rule and a copy of any new or amended rule. Subsections (c) through (f) prescribe limitations on certain matters that the association may address in a rule. For example, subsection (d) provides that an association may not prohibit the display of state flags or signs for candidates for election, but may adopt rules governing the time, place, size, number, and manner of such displays.[4] Finally, subsection (g) provides that an "association's internal business operating procedures need not be adopted as rules."

A standard foreclosure policy is not designated expressly as either an internal business operating procedure or a rule. The act does not define "internal business operating procedures." A rule, however, is defined in expansive terms. A " '[r]ule' means a policy, guideline, restriction, procedure or regulation of an association, however denominated . . . which is not set forth in the declaration or bylaws and which governs the conduct of persons or the use or appearance of property."[5] General Statutes § 47-202 (31). Similarly, " '[p]erson' " is expan-

sively defined as "an individual, corporation, limited liability company, business trust, estate, trust, partnership, association, joint venture, public corporation, government, governmental subdivision or agency, instrumentality or any other legal or commercial entity." General Statutes § 47-202 (24).

These definitions make it abundantly clear that, even if we were to agree with the plaintiff that its standard foreclosure policy exclusively governs the conduct of its attorney, the policy still would fall within the plain meaning of a rule as defined by the act. Had the legislature intended to limit rules to those policies that govern the conduct of unit owners or their visitors, it readily could have done so. Instead, the legislature provided that rules include policies that govern the conduct of "persons," an all-encompassing term. General Statutes § 47-202 (31).

That this capacious meaning was intended is supported by concurrent actions by the legislature in 2009. In the same public act, the legislature added the rule-making provision; Public Acts 2009, No. 09-225, § 34 (P.A. 09-225), codified at § 47-261b; added the definition of a rule, and amended the already broad definition of person to make it even more comprehensive. P.A. 09-225, § 1. In that same public act, the legislature increased unit owners' rights with respect to information about and participation in board meetings, protections that would be further advanced by an expansive interpretation of rules subject to notice and comment requirements. See P.A. 09-225, § 25, codified at General Statutes § 47-250.

We nevertheless recognize that application of the literal meanings of person and rule would effectively render the exception for internal business operating procedures superfluous. Under a literal interpretation, a board policy to cash checks received by the association on Wednesdays would be a rule because it would not be set out in the declaration or bylaws and it would govern the conduct of the person cashing the check. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word is superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). A proper definition of rule, therefore, must give some reasonable field of operation to the term internal business operating procedure. At the same time, that field of operation presumably must be quite limited in scope given that rule is defined so broadly, internal business operating procedure is undefined, and exceptions are generally construed narrowly.

Accordingly, we conclude that it is appropriate to

consider extratextual sources to the extent that they can illuminate any limiting principle. We first turn to the legislative history of P.A. 09-225, which enacted the relevant changes to the act. Public Act 09-225 was the product of a study group created by the Connecticut Law Revision Commission to consider amendments made to the uniform act in 2008, on which our original act was modeled. See 52 H.R. Proc., Pt. 31, 2009 Sess., p. 9861; *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 735, 904 A.2d 188 (2006). Representative Gerald M. Fox III explained that the "goals of the study committee were to provide significant new rights to individual unit owners when dealing with the association's elected board of directors" and that the study committee "also wanted to enhance the association's authority to address issues that arise in the daily life of the common interest community . . . ." 52 H.R. Proc., supra, p. 9862. Representative Arthur J. O'Neill noted that P.A. 09-225 would provide "new protections for unit owners facing foreclosure" by delaying commencement of foreclosure actions. Id., p. 9866.

The prefatory note and comments to the 2008 amendments to the uniform act, which contains a rules provision similar in all material respects to § 47-261b, suggest a broader purpose for P.A. 09-225, § 34. See generally *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 404 n.9, 920 A.2d 1000 (2007) (citing prefatory note to 1994 version of uniform act). The prefatory note in the 2008 version of the uniform act explains that there "has been considerable publicity across the country regarding alleged abuse in the foreclosure process when unit owners fail to pay sums due the association. To address this specific issue, the [uniform] [a]ct proposes new and considerable restrictions on the foreclosure process as it applies to common interest communities." Unif. Common Interest Ownership Act of 2008, prefatory note, 7 U.L.A. (Pt. 1B) 225 (2009). The comment to the uniform act's counterpart to § 47-261b further explains: "[T]he 'association's internal business operating procedures need not be adopted as rules'. This distinction permits the association's executive board or its management company to adopt or amend at will the wide variety of internal management procedures that govern the association's daily business activities—as opposed to the conduct of persons or the use and appearance of property. It may be helpful to provide a few examples of what the drafters contemplate might be typical internal business procedures that need not be adopted as rules:

"The association wishes to solicit bids from potential contractors for a particular [project] or service and adopts a procedure for soliciting, reviewing and accepting those bids.

"The board approves a management contract with an outside management company. The management

contract contains various procedures governing how the manager is going to carry out its duties with regard to the management of the association.

"The recreation committee adopts a sign-up procedure for using the pool table in the clubhouse." Id., § 1-103, comment (28), p. 246.

These extratextual sources yield the following considerations. The legislative history of P.A. 09-225 suggests that internal business operating procedures cannot be policies that could lead to abuse in the foreclosure process. The examples in the uniform act of internal business operating procedures suggest that such procedures would address daily business activities and not policies that impact unit owners' rights and obligations, directly or indirectly.

We need not decide, however, a clear line of demarcation between rules and internal business operating procedures. Instead, we need only decide into which category standard foreclosure policies fall in light of these limiting principles.

A comparison of the two policies adopted by the board in the present case is instructive.[6] That comparison demonstrates that such policies may determine: (1) who will decide whether to commence a foreclosure action (the 2011 policy authorizes the property manager or the board to refer the matter to the plaintiff's attorney, whereas the 2010 policy authorizes the board only); (2) what amount of delinquency will trigger a foreclosure action (the statutory minimum or greater); (3) how unit owner payments will be allocated to the outstanding debt (principal, interest, attorney's fees, etc.); (4) the circumstances under which attorney's fees will begin to accrue; (5) the conditions under which unit owners may avoid foreclosure following delinquency; and (6) demand requirements before commencing foreclosure. Indeed, the change from the 2010 policy to the 2011 policy: reduced the two written demands (one by the association and one by the attorney) before commencement of a foreclosure action to a single demand by the attorney; eliminated the thirty day grace period to bring the owner's account current to avoid foreclosure; and eliminated the option of a six month payment plan to avoid foreclosure. Of course, because the unit owners were never given notice of the policies, they could not comment on whether such changes should be made.

Given the real and substantial effect that such matters could have on the circumstances under which unit owners will incur financial obligations and potentially lose their residence, we cannot reasonably construe the policy as anything but a rule. To conclude otherwise would render an absurd result. Under the plaintiff's proffered interpretation of the act, associations would be required to give unit owners notice and the opportunity to comment regarding policies on matters as inconsequential

as the placement of bird feeders outside units but would not be required to afford notice and an opportunity to comment on a policy prescribing conditions relating to the foreclosure of the unit owner's property.

Finally, we note that deeming standard foreclosure policies to be rules creates no impediment to a board's timely and effective fulfillment of its responsibilities. The adoption or amendment of such policies would not occur routinely.

The plaintiff nevertheless advances several arguments for characterizing standard foreclosure policies as internal business operating procedures, none of which we find sufficiently persuasive. First, the plaintiff argues that the purpose of § 47-258 (m), according to a treatise authored by one of the members of the study committee, is to provide the board with the ability to prescribe and have knowledge of the foreclosure criteria used by its property manager or legal counsel in deciding when and how to foreclose. See 1 D. Caron & G. Milne, Connecticut Foreclosures (5th Ed. 2011) § 13-1:9, p. 657 (Section 47-258 [m] was "intended to create a set of objective prerequisites to an association's foreclosure. A particular concern leading to the adoption of this provision was the business practice of some associations to retain a management company or law firm to oversee foreclosures, and the association had little knowledge of which units were in foreclosure, and the extent of the default that preceded the decision to foreclose. Although, as an alternative to unit-by-unit voting to foreclose, the association may still enter into such arrangements with a management company or law firm, it may only do so after it has adopted a standard policy establishing the criteria to be satisfied before a foreclosure can commence."). The plaintiff's argument is beside the point. The fact that the policy provides such objective criteria does not eliminate the effect of such criteria on unit owners. Moreover, to the extent that the foreclosure criteria are intended in part to protect unit owners, as the plaintiff itself concedes, notice and comment requirements better protect unit owners from arbitrary collection policies.

Second, the plaintiff claims that, "[a]s an alternative to adopting a collection policy, the . . . board can vote to commence a foreclosure specifically against a unit. . . . It would yield an absurd result and not harmonize with the statute to require that the standard collection policy be adopted as a rule, yet allow this process to be circumvented by a simple board vote to foreclose." (Citation omitted.) We note that, with a limited exception, the act still requires a lesser form of notice and comment for matters addressed in board meetings, even if not rules.[7] See General Statutes (Rev. to 2011) § 47-250 (b) (1) through (6). We do not agree, therefore, that the alternative basis for commencing a foreclosure action is fundamentally at odds with a heightened notice

and comment requirement for standard policies.

Third, the plaintiff argues, and the dissent agrees, that the standard foreclosure policy at issue *in this case* cannot be a rule because a rule addresses a matter that is not set forth in an association's declaration; General Statutes § 47-202 (31); and the plaintiff's declaration does address unit owners' obligations to pay assessments and the plaintiff's right to foreclose due to unpaid assessments. We disagree. The plaintiff's declaration simply tracks the statutory language that existed before P.A. 09-225 added the rule-making provision and the limitations on associations' right to foreclose, including the adoption of a standard foreclosure policy. That declaration does not address the procedures, rights, and limitations set forth in the board's foreclosure policies, previously discussed. Merely restating statutory rights, of which unit owners already are legally deemed to have notice, does not provide notice to unit owners of significant information bearing on the potential loss of their unit.

The flaw in the position of the plaintiff and the dissent is aptly illustrated by the following example. Section 47-261b (d) specifies that an association may adopt "rules governing the time, place, size, number and manner of [flag] displays," rules that necessarily would be subject to the notice and comment requirement. Suppose that the declaration incorporated this statutory language. Following the logic of the plaintiff and the dissent, if the board later adopted a policy requiring all flags to be no larger than four inches by six inches and to be displayed only on holidays, that policy would not be subject to the notice and comment requirement because the right of the association to regulate the time and size of flag displays has been set forth in the declaration. Such a result plainly would contravene the legislature's intent, because the statute clearly envisions that such policies will be promulgated as rules subject to notice and comment. Accordingly, we are not persuaded that a declaration's incorporation of statutory rights or limitations excuses a board from complying with the rule-making requirements for matters that otherwise plainly fall within the meaning of a rule.

Accordingly, we conclude that standard foreclosure policies are rules that require notice and comment before adoption. To the extent that the plaintiff's concerns arise from the expansive definitions in the act, its recourse lies with the legislature.

II

In light of our conclusion that a foreclosure policy is a rule, we consider the defendant's contention that the plaintiff's failure to adopt a standard foreclosure policy in accordance with the rule notice and comment requirements deprived the trial court of subject matter jurisdiction. We agree.

Because a "determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 314, 968 A.2d 396 (2009). It is well established that "there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent" to overcome that presumption. *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645 (2001). Nonetheless, we are persuaded that such an intention is manifested in the act's condition precedent to commencing a foreclosure action, namely, in the absence of a board vote to institute the particular foreclosure action, the proper adoption of a standard foreclosure policy that would authorize that action.

In ascertaining legislative intent, our case law has distinguished between conditions imposed on the commencement of a statutorily created right of action and statutory conditions imposed on an action existing under the common law. The former generally is deemed to be jurisdictional, whereas the latter is not. See *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 371, 10 A.3d 1 (2010) (distinguishing its jurisdictional conclusion from conclusion reached in *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 811 A.2d 693 [2003], because "it was important that the statute [in *Stec*] served as a mechanism to enforce the common-law right to compensation for governmental takings, as opposed to a time limitation on the enforcement of a right specifically created by statute"). Thus, in the context of a time limit for commencing litigation, this court explained the distinction as follows: "A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action. . . . Where the limitation is deemed procedural and personal it is subject to being waived unless it is specifically pleaded because the limitation is considered merely to act as a bar to a remedy otherwise available. . . . Where, however, a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter. . . . The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite . . . ." (Citations omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford*, 205 Conn. 219, 231–32, 530 A.2d 1056 (1987).

Although this issue arises most frequently in the context of time limits, this court also has held that other condition precedents to the commencement of a statutory cause of action are jurisdictional. See *Forbes* v. *Suffield*, 81 Conn. 274, 275, 70 A. 1023 (1908) ("The

right to maintain an action against a municipality for the recovery of damages for personal injuries resulting from defective highways, exists only by force of [the applicable statute], which defines and limits the right and prescribes the conditions under which it may exist. . . . The giving of this notice [within a prescribed time] is expressly made a condition precedent to any right of action. Until it is given no such right exists."); see also *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007) (timely service of notice to quit in summary process actions jurisdictional); *Goodson* v. *State*, 232 Conn. 175, 180, 653 A.2d 177 (1995) (This court concluded that the trial court lacked jurisdiction due to an absence of pending arbitration when a party sought relief under the statute permitting the court to issue an order pendent lite upon the application of " 'any party to the arbitration . . . .' " We reasoned: " 'The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given . . . . In such a situation jurisdiction is only acquired if the essential conditions prescribed by statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties.' ").

In certain instances, the legislature may be deemed to have manifested an intention not to create a jurisdictional bar even when it imposes a condition upon a statutorily created right of action when doing so could frustrate the purpose of the statute or would be inconsistent with other terms in the statute. See, e.g., *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 381, 870 A.2d 457 (2005) (time limit prescribed for Commission on Human Rights and Opportunities to investigate complaint and make final administrative disposition not jurisdictional when statute explicitly provided that Commission on Human Rights and Opportunities retained jurisdiction over complaint in cases wherein it failed to complete its investigation within prescribed period).

Application of these principles persuades us that the act's condition precedent to commencing a foreclosure action—that a board either votes to institute the particular action or to adopt a standard foreclosure policy—is jurisdictional. "Liens for delinquent common expense assessments on individual units within an association are creatures of statute. . . . In addition to creating the lien and authorizing its foreclosure, § 47-258, contrary to the tenet that the priority of liens is governed by the common law rule that first in time is first in right . . . carves out an exception and grants a priority to the lien for common expense assessments." (Citations omitted.) *Hudson House Condominium Assn., Inc.* v. *Brooks*, 223 Conn. 610, 614, 611 A.2d 862 (1992). Although strict foreclosure is a common-law process; *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn.

563, 568, 409 A.2d 1020 (1979); we conclude that the right to foreclose the common charges lien is more properly characterized as a statutory right of action.

The statutory language indicates that the legislature intended the three conditions necessary for commencing an action to foreclose a common charges lien to be jurisdictional prerequisites. General Statutes (Rev. to 2011) § 47-258 (m) provides that "[a]n association *may not commence* an action to foreclose a lien on a unit owner under this section *unless*" it satisfies certain prescribed conditions. (Emphasis added.) The legislature could have phrased the requirement that a board adopt a policy or vote to commence proceedings as a limitation on a court's ability to grant relief. Cf. General Statutes § 45a-100 (k) ("the court shall not grant relief under this section if"). Instead, it phrased the requirement as a condition precedent to the commencement of the action itself. Thus, the adoption of a standard foreclosure policy is "a condition precedent to any right of action. Until [a vote is taken or a procedure is adopted] no such right exists." *Forbes* v. *Suffield*, supra, 81 Conn. 275. Because the plaintiff did not properly satisfy either condition precedent, the trial court should have granted the defendant's motion to dismiss.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to dismiss and to render judgment dismissing the plaintiff's action.

In this opinion PALMER, EVELEIGH, ESPINOSA and ROBINSON, Js., concurred.

[1] General Statutes (Rev. to 2011) § 47-258 (m) (3) provides: "An association may not commence an action to foreclose a lien on a unit under this section unless . . . the executive board has either voted to commence a foreclosure action specifically against that unit or has adopted a standard policy that provides for foreclosure against that unit."

Hereinafter all references to § 47-258 are to the 2011 revision of the General Statutes unless otherwise noted.

[2] Connecticut Housing Finance Authority, EdConn Federal Credit Union, Capital One, Jefferson Radiology, P.C., Palisades Acquisition, LLC, and Achieve Financial Credit Union were also named as defendants. Limberger is the only defendant who is a party to this appeal and, for convenience, all references herein to the defendant are to Limberger.

[3] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The dissent attempts to extrapolate from these specified limitations on the association's rule-making authority a broad principle by which to ascertain whether standard foreclosure policies are rules. There is no support, however, textual or extratextual, for the dissent's inferential leap. For all we know, these matters may have been specified simply because they were a common subject of complaints by unit owners against associations. Indeed, one of the matters addressed in § 47-261b (d), limitations on the display of flags, was of such concern that it inspired federal legislation a few years before the passage of Public Acts 2009, No. 09-225, § 34. See Freedom to Display the American Flag Act of 2005, Pub. L. No. 109-243, 120 Stat. 572 (2006).

[5] General Statutes § 47-202 (31) provides: " 'Rule' means a policy, guideline, restriction, procedure or regulation of an association, however denominated, *which is adopted by an association pursuant to section 47-261b* which is not set forth in the declaration or bylaws and which governs the conduct of persons or the use or appearance of property." (Emphasis added.)

We note that, because § 47-261b encompasses both categories of proce-

dures that a board may adopt—rules and internal business operating procedures—the phrase referring to this section does not inform our analysis.

[6] Although the parties dispute which policy is controlling in the present case, that fact is not material to our resolution of this appeal. Both policies were submitted as full exhibits in the trial court. Even if we assume that the 2011 policy is the sole operative policy because it superseded the 2010 policy, as the plaintiff contends, either both policies are rules or both are internal business operating procedures. Otherwise, if the 2010 policy is a rule but the 2011 policy is an internal business operating procedure, the plaintiff could not repeal the former in favor of the latter without giving unit owners notice and the opportunity to comment on the proposed change. General Statutes § 47-261b.

[7] General Statutes (Rev. to 2011) § 47-250 (b) (8) permits the board to act by unanimous consent as documented in a record authenticated by all its members, instead of meeting. The statute requires, however, prompt notice to all unit owners of any action taken by unanimous consent. General Statutes (Rev. to 2011) § 47-250 (b) (8). We question whether it would be consistent with the intention of P.A. 09-225 to routinely vote on foreclosures by unanimous consent. We need not address that issue in the present case.

———————————————