******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GLEN A. CANNER, EXECUTOR (ESTATE OF
CHARLES A. CANNER) *v.* GOVERNORS
RIDGE ASSOCIATION, INC., ET AL.
(SC 20759)

LOUIS D. PUTERI *v.* GOVERNORS RIDGE
ASSOCIATION, INC., ET AL.
(SC 20760)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

Pursuant to the Common Interest Ownership Act (CIOA) (§ 47-249 (a)),
condominium associations are "responsible for maintenance, repair and
replacement of the common elements" of a common interest community,
except to the extent provided by the community's declaration or pro-
vided by, among other statutory provisions, General Statutes § 47-255
(h).

The plaintiff G, the executor of the estate of his father, C, and, in the
second case, the plaintiff L, brought separate actions against the defen-
dant condominium association, alleging that the foundations supporting
the units purchased by C and L were defective. L and C purchased the
units, which were part of a common interest community, in 2001 and
2002, respectively. Around that time, the defendant began affirming its
responsibility for any foundation settlement issues. C's and L's units
thereafter suffered from significant, uneven settling. From 2012 to 2016,
the defendant hired several companies to investigate the possibility of
repairing the foundations underlying the units, but no repairs were ulti-
mately made. G and L commenced their actions in 2016 and 2017, respec-
tively, pursuant to statute (§ 47-278 (a)). The initial complaints alleged
that the defendant had negligently designed and constructed the founda-
tions and, thereafter, had violated its duties under § 47-249 (a) by failing
to conduct necessary repairs to common elements of the community.
The defendant asserted as a special defense that the CIOA claims were
time barred by the statutory (§ 52-577) three year limitation period gener-
ally applicable to tort actions. Thereafter, in 2018, G and L filed amended
complaints that included the allegation that the defendant had breached
its declaration and bylaws by failing to maintain, repair, or replace the
defective foundations. After a hearing, the trial court concluded that the
CIOA claims were time barred and rendered judgments for the defen-
dants. The Appellate Court affirmed the trial court's judgments, conclud-
ing, inter alia, that the limitation period set forth in § 52-577 applied
because the claims sounded in tort rather than contract, and that the

CIOA claims accrued when the units were purchased, as the original wrong underlying those claims related to methods of construction. The Appellate Court also agreed with the trial court's conclusion that the declaration and bylaws created no duty to repair because the relevant declaration required the defendant to repair only insured common elements, and there was no requirement that the foundations themselves be insured. Accordingly, the Appellate Court concluded that, because the actions were commenced more than three years after the units were purchased, the trial court correctly concluded that the CIOA claims were time barred. On the granting of certification, G, and L's daughter, who had been substituted for L as the plaintiff following L's death after the Appellate Court released its decision, filed separate appeals with this court. *Held*:

1. The Appellate Court properly applied the statute of limitations set forth in § 52-577 to the portion of the CIOA claims seeking recovery for negligence during the course of construction of the foundations:

Because the CIOA included no express statute of limitations governing claims brought pursuant § 47-278, this court looked to the nature of the cause of action in determining the applicable statute of limitations, and this court concluded that violations of duties imposed directly by the CIOA sound in tort and are governed by § 52-577, whereas violations of a community's declaration or bylaws sound in contract and are governed by the statutory (§ 52-576) six year limitation period applicable to contract claims.

In the present cases, the initial complaints alleged only that the defendant had negligently designed and constructed the foundations, they did not allege that the defendant had breached any provision of the community's declaration or bylaws, and, although the amended complaints included allegations that the defendant violated the declaration and bylaws, those additional allegations related solely to the claims that the defendant improperly had failed to maintain, repair or replace the foundations and did not connect the allegations related to the construction process with the breach of the declaration or bylaws.

Accordingly, the CIOA claims relating to the construction process alleged only statutory, as opposed to contractual, violations, and such claims, therefore, were subject to three year limitation period prescribed by § 52-577.

Because the three year limitation period prescribed by § 52-577 began to run when L and C purchased their units in 2001 and 2002, respectively, and, because the present actions were not commenced until more than one decade later, there was no error with respect to the conclusion that the claims relating to the construction process were time barred.

2. The Appellate Court improperly upheld the trial court's disposition, in favor of the defendant, of the claims, initially raised in the amended complaints, that the defendant had violated its contractual duties under the bylaws to maintain, repair or replace common elements when it failed to effectuate repairs to the foundations:

The amended complaints alleged that the defendant had violated the specific provision of the bylaws requiring the defendant to carry out maintenance of and repairs to the common elements, and, contrary to the defendant's argument and the conclusions of both the trial court and the Appellate Court, the existence of a provision in the declaration affirmatively requiring that it maintain and repair insured common elements did not preclude the existence of a duty on part of the defendant to maintain and repair uninsured common elements.

The fact that the defendant possessed discretion with respect to the maintenance of uninsured common elements did not insulate the exercise of that discretion from judicial review, and the broad, remedial purpose of CIOA supported a conclusion that statutory and contractual obligations relating to the maintenance and repair of uninsured common elements, although vested in the discretion of the defendant, should continue to be characterized as a legal duty, as the defendant would otherwise be permitted to forgo even reasonable repairs without recourse to the unit owners, leaving them without the ability to seek judicial relief in the event the defendant exceeded its discretion.

The claims that the defendant breached its contractual duties imposed under the bylaws by failing to repair the foundations were governed by the six year limitation period applicable to contract claims in § 52-576.

Moreover, it was undisputed that, from the time C and L purchased their units until 2016, the defendant repeatedly affirmed its responsibility to maintain the foundations, made minor repairs as problems arose, and explored more substantial repairs, and that all such efforts had ceased, the claims that the defendant breached the bylaws by failing to repair the foundations therefore accrued at the time the defendant ceased its efforts to repair, and, because the contractual claims were initially raised in 2018, they were timely under § 52-576.

Argued November 13, 2023—officially released April 2, 2024

*Procedural History*

Action, in each case, seeking damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield, and transferred to the judicial district of Waterbury, Complex Litigation Docket, where the cases

were tried to the court, *Lager, J.*; judgment in each case for the defendants, from which the plaintiff in each case appealed to the Appellate Court, *Prescott, Suarez* and *DiPentima, Js.*, which affirmed the judgments of the trial court; thereafter, Lorraine Sando, executrix of the estate of Louis D. Puteri, was substituted as the plaintiff in the second case; subsequently, the plaintiff in the first case and the substitute plaintiff in the second case, on the granting of certification, filed separate appeals with this court, which consolidated the appeals. *Affirmed in part*; *reversed in part*; *further proceedings*.

*Glen A. Canner*, the appellant in Docket No. SC 20759, and for the appellant in Docket No. SC 20760 (plaintiff in the first case and substitute plaintiff in the second case).

*Timothy M. Gondek*, for the appellee in Docket Nos. SC 20759 and SC 20760 (named defendant in each case).

*Opinion*

DANNEHY, J. The plaintiffs, Glen A. Canner, the executor of the estate of Charles A. Canner, and Louis D. Puteri,[1] brought separate actions against a condominium association, the named defendant in each case, Governors Ridge Association, Inc.,[2] alleging that the

_____

[1] Glen A. Canner commenced the first action in his representative capacity as the executor of the estate of his father, Charles A. Canner. The original plaintiff in the second action, Louis D. Puteri, died during the pendency of the proceedings before the Appellate Court. We hereinafter refer collectively to Glen A. Canner and to Louis D. Puteri as the original plaintiffs. Louis D. Puteri's daughter, Lorraine Sando, was subsequently appointed to serve as the executrix of Puteri's estate and, thereafter, was substituted as a plaintiff in the second action. For the sake of simplicity, we refer collectively to Glen A. Canner and Lorraine Sando, in their representative capacities, as the plaintiffs and individually by name when necessary. We further refer collectively to Charles A. Canner and Louis D. Puteri as the decedents and individually by name when necessary.

[2] The following parties were also named as defendants in one or both of the underlying actions: The town of Trumbull, Donald G. Murray, South Meadow Development, LLC, Glenn Tatangelo, Anthony O. Lucera, Adeeb Consulting, LLC, Kareem Adeeb, Jarrett M. Crooks Architects, LLC, and Jarrett M. Crooks. Because the interests of these parties are not at issue in

foundations supporting their respective units were sinking as a result of improper design. In this consolidated appeal, the plaintiffs contend that the Appellate Court improperly affirmed the trial court's judgments in favor of the defendant on the ground that the three year tort statute of limitations; see General Statutes § 52-577; barred pursuit of an alleged cause of action under the Common Interest Ownership Act (CIOA), General Statutes § 47-200 et seq. We conclude that some, but not all, of the plaintiffs' claims against the defendant are time barred and, accordingly, we affirm in part and reverse in part the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to our consideration of the present appeal. In 2001, the defendant received a special permit from the Trumbull Planning and Zoning Commission approving an expansion of an existing common interest community through the construction of thirty-six additional, detached single-family condominium units located in Trumbull. Motivated by concerns related to soil conditions on the proposed site, the defendant's developer, South Meadow Development, LLC, hired Adeeb Consulting, LLC, to design a series of foundations for each of these new units.[3] Although previous plans had called for the use of pilings, Kareem Adeeb, a geotechnical and structural engineer and owner of Adeeb Consulting, LLC, proposed an alternative system relying on geofabric, footings, and grade beams. Such a design, Adeeb stated, would "tie all foundation elements together and increase the rigidity of the foundation system" and "decrease, if not eliminate, the chance that differential settlement will take place." Notwithstanding warnings from other engi-

this appeal, we refer to Governors Ridge Association, Inc., as the defendant for the sake of simplicity.

[3] Testimony and documents presented during the course of the trial court's evidentiary hearing indicate that the site, once a peat moss bog, had been filled in with blasted rock following the construction of Route 25 in Trumbull.

neers,[4] the Trumbull Building Department approved Adeeb's designs, and construction was subsequently completed.

The decedents owned, respectively, two detached single-family condominium units created during the course of this expansion that have, undisputedly, suffered from significant, uneven settling. One of the units, located at 105 Governor Trumbull Way, was purchased by Lorraine Sando's father, the decedent Louis D. Puteri, on December 26, 2001. The other unit, located at 220 Fitch's Pass, was purchased by Glen A. Canner's father, the decedent Charles A. Canner, a few months later, on April 30, 2002.[5] Around that same time, the defendant began to make statements affirming its responsibility for any future foundation settlement issues.[6]

Over the following years, the decedents experienced a series of escalating problems inside of their units as a result of settling: cracks appeared in the walls, doors stopped closing correctly, and windows began to stick.

[4] As the trial court recounted: "Exhibit 33 is a letter dated July 22, 2001, written by Herbert L. Lobdell, a professional engineer, questioning Adeeb's foundation design and opining that it created a 'risk of some long-term settlement and structural distress.' Lobdell believed the foundations needed to be pile supported. A copy of this letter was sent to the Trumbull Building Department. Exhibit 40 is a report dated October 12, 2001, sent directly to the Trumbull Building Department, by John P. Dugan, a professional engineer. At page 6, the report opines that '[b]uildings along Fitch's Pass will be underlain by organic soils and should be supported by piles . . . .' Dugan restates this opinion in exhibit 41, dated October 30, 2001."

[5] Although Louis D. Puteri's wife, Loretta G. Puteri, and Charles A. Canner's wife, Doris L. Canner, were both listed as purchasers respectively in these two sales, both predeceased their husbands.

[6] For example, the parties stipulated that minutes of the defendant's January 2, 2002 board meeting state that, "[o]nce the building is complete the [defendant] is responsible for any settling that may occur." (Internal quotation marks omitted.) In a January 17, 2002 letter to Trumbull town officials raising concerns about the construction approval process, the defendant's board wrote: "We have some very real concerns that everything be done correctly, for if there are problems in the future, the [defendant] will be the first to bear the responsibility for remediation."

The decedents reported these problems to the defendant's management company, Consolidated Management Group, which responded by effectuating repairs in connection with these individual issues.

Problems eventually came to a head in 2011 and 2012, when both decedents attempted, and failed, to sell their units. On May 9, 2011, the listing agent for 220 Fitch's Pass, Kenneth Martin, received feedback from potential buyers about the "very dramatic slope in the floors . . . ." Likewise, in an email to an employee of Consolidated Management Group dated June 20, 2012, Louis D. Puteri catalogued various "noticeable defects" in his unit located at 105 Governor Trumbull Way, including a shifted structural beam, a crack running the full length of the second floor landing, inoperable doors and windows throughout the house, damage to the rear concrete patio, and a "one to two inch deviation in the floor height in the transition from the hallway to the spare bedroom on the second floor . . . ."

The defendant investigated the possibility of making structural repairs to the foundations underlying the decedents' units from 2012 to 2016.[7] In 2012, the defendant hired Fuller Engineering & Land Surveying, LLC, to measure the settling. In 2014, the defendant began seeking proposals from several contracting, engineering, and consulting firms to conduct repairs. On December 8, 2014, one of those firms, Maser Consulting P.A., held a teleconference with representatives of the defendant in order to discuss a plan to lift the two units and place

---

[7] During this period, the defendant continued to reaffirm repeatedly its responsibility for repairs. For example, the parties stipulated that minutes of the defendant's February 26, 2014 board meeting state that "[i]t is confirmed that any settling issues are the responsibility of [the defendant]." (Internal quotation marks omitted.) The parties also stipulated that the minutes of the defendant's June 15, 2015 board meeting reiterated that, "[l]egally, the [defendant] is solely responsible for repairing the two units." (Internal quotation marks omitted.)

them on piles. Although excavation was tentatively scheduled to start on December 29, 2014, that project was subsequently cancelled. From January, 2015, through March, 2016, the defendant continued to seek proposals from five additional firms. None of these companies, however, ultimately undertook repairs.

The civil actions underlying this consolidated appeal were commenced; first, on February 11, 2016, *Canner* v. *Governors Ridge Assn.*, *Inc.*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-16-6031521-S, and, then, on September 5, 2017, *Puteri* v. *Governors Ridge Assn.*, *Inc.*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-17-6037281-S. The complaints in each case asserted a statutory cause of action alleging that the defendant had violated CIOA. Read broadly, these claims appeared to allege that the defendant had constructed the foundations under the units negligently and, thereafter, had violated their statutory duties by failing to conduct necessary repairs to common elements of the community.[8] See General Statutes § 47-249 (a) ("[e]xcept to the extent provided by the declaration . . . or subsection (h) of section 47-255, the association is responsible for maintenance, repair and replacement of the common elements, and each unit owner is responsible for maintenance, repair and replacement of his unit"). The initial pleadings did not, however, allege that the defendant had breached its second amended and restated declaration (declaration) or its operative bylaws (bylaws) with respect to the construction or maintenance of common elements.

The defendant filed its respective answers to the operative complaints in the underlying cases on June 1, 2018, both of which alleged by way of special defense that the CIOA claims "sound[ed] in tort, and therefore

---

[8] The parties agree that the foundations underlying the decedents' units are properly considered to be common elements.

[are] time barred pursuant to . . . § 52-577." A few months later, on August 14, 2018, the original plaintiffs amended their CIOA claims to specifically allege, for the first time, that the defendant had violated, inter alia, § 23.1 of the declaration[9] and § 5.2 (b) of the bylaws[10] by failing to make timely repairs to the foundations underlying their units. A few days later, the trial court issued an order indicating that it had scheduled, with the consent of all parties, an evidentiary hearing limited to the statute of limitations defense and other matters raised in avoidance of the statute of limitations.

After conducting a two day evidentiary hearing and receiving additional briefing from the parties, the trial court issued memoranda of decision, concluding that the CIOA claims against the defendant were time barred. After observing that CIOA itself lacked an express limitation period, the trial court began its substantive analysis by looking to the pleadings to determine "the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued [on]." *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007). Although the trial court recognized that the amended complaints alleged violations of both the declaration and bylaws, it found that those provisions were inapposite, noting that § 23.1 of the declaration mandates repair of only *insured* common elements and that, because foundations were not required to be insured; see General Statutes § 47-255 (a); the defendant

---

[9] Section 23.1 of the declaration provides in relevant part that "[a]ny portion of the [c]ommon [i]nterest [c]ommunity for which insurance is required under [a]rticle XXII which is damaged or destroyed shall be repaired or replaced promptly by the [defendant] . . . ."

[10] Section 5.2 (b) of the bylaws provides: "All maintenance and repairs of and replacements to the [c]ommon [e]lements and [l]imited [c]ommon [e]lements, unless otherwise provided in [a]rticle XIX of the declaration, shall be made by the [e]xecutive [b]oard and be charged to all [u]nit [o]wners as a [c]ommon [e]xpense, unless necessitated by the negligence, misuse or neglect of a [u]nit [o]wner."

had no contractual duty to repair the foundations. As a result of that conclusion, the trial court focused its analysis on the question of whether the statutory claims alleging violations of § 47-249 (a) were timely under the tort statute of limitations, § 52-577. See, e.g., *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 200 ("when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort").

The trial court concluded that the essence of the statutory claims was that the foundations had been improperly constructed on soft ground and that, because § 52-577 runs "from the date of the act or omission complained of"; (internal quotation marks omitted) *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 294, 365 A.2d 1180 (1976); the clock started to run on those particular claims when the decedents acquired their homes in 2001 and 2002, rather than the time that they first discovered harm. Finally, the trial court declined to apply the continuing course of conduct doctrine to toll the running of § 52-577, concluding that (1) the original plaintiffs had failed to demonstrate that the defendant owed an absolute duty to act, and (2) there was no evidence that the defendant had breached any discretionary duties imposed on it by acting "unreasonably or in bad faith . . . ."

The original plaintiffs appealed to the Appellate Court from the trial court's judgments in favor of the defendant, claiming, among other things, that (1) the six year contractual limitation period set forth in General Statutes § 52-576 should have been applied, and (2) their claims did not accrue at the time of purchase. *Canner* v. *Governor's Ridge Assn., Inc.*, 210 Conn. App. 632, 640–41, 647, 270 A.3d 694 (2022). The Appellate Court rejected both contentions, concluding that the application of § 52-577 was appropriate because the claims sounded in tort rather than in contract, and those particular claims accrued on the date that the decedents

closed on the units because the "original wrong" under-lying the claims related to methods of construction. Id., 646–47, 649. The Appellate Court further agreed with the trial court that the declaration and bylaws, with a focus on § 23.1 of the declaration, created no duty to repair because the foundations did not need to be insured.[11] Id., 646–47. Because the allegations sounded in tort, and because these civil actions were commenced more than three years after the decedents' respective purchases of their units, the Appellate Court upheld the trial court's conclusion that the CIOA claims were time barred. Id., 659, 661–62. This consolidated appeal followed.

Before this court, the plaintiffs renew the claim that the six year limitation period applicable to contract claims set forth in § 52-576, and not the three year statute contained in § 52-577, should have been applied to the CIOA claims. The plaintiffs contend that the defendant's duty to maintain, repair, or replace common elements under the bylaws is contractual and that a claim for breach of that obligation did not arise until the defendant repudiated it. The plaintiffs further contend that both the Appellate Court and the trial court erred in applying § 52-577 to the portion of the CIOA claims seeking recovery for the defendant's alleged misconduct during the course of construction. For the reasons that follow, we agree with both the trial court and

[11] The Appellate Court declined to reach two of the original plaintiffs' subordinate claims as inadequately briefed, namely, that (1) the trial court erred in failing to rule that reaffirmations by the defendant of its obligation to fix the settling problems restarted the statute of limitations, and (2) the trial court erred by not concluding that the continuing course of conduct doctrine applied to toll any statute of limitations. *Canner* v. *Governor's Ridge Assn.*, *Inc.*, supra, 210 Conn. App. 651–52 n.15. The Appellate Court likewise declined to address the original plaintiffs' claims that the trial court had erred in finding the defendant reasonably exercised its discretion, stating, without further discussion, that no such finding had been made. Id. But see footnote 20 of this opinion.

the Appellate Court that the claims that the defendant violated its statutory duties by negligently constructing the foundations sound in tort and are time barred under § 52-577. We further conclude, however, that the respective complaints also distinctly alleged that the defendant had violated its contractual duty under the declaration and bylaws to maintain, repair, or replace foundations and that these claims accrued at the time the defendant ceased its efforts to repair.

## I

Before addressing the substance of the claims presented in this consolidated appeal, we begin with a brief review of the statutes and relevant principles of law governing (1) duties to maintain common elements under both CIOA and the applicable declaration and bylaws, and (2) the statutes of limitations potentially applicable to actions alleging the breach of those duties.[12]

## A

As this court has previously noted, CIOA was adopted by our legislature to address "the creation, organization and management of common interest communities . . . . It entails the drafting and filing of a declaration . . . the enactment of bylaws . . . the establishment of a unit owners' association . . . and an executive board to act on . . . behalf [of the association]. . . . It anticipates group decision-making relating to the

---

[12] We note that the scope of our review on these subjects is plenary. See, e.g., *Escobar-Santana* v. *State*, 347 Conn. 601, 612, 298 A.3d 1222 (2023) (statutory interpretation presents question of law); *Nationwide Mutual Ins. Co.* v. *Pasiak*, 346 Conn. 216, 228, 288 A.3d 615 (2023) (interpretation of contract presents question of law); *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023) ("[t]he interpretation of pleadings is always a question of law for the court" (internal quotation marks omitted)); *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–408, 957 A.2d 836 (2008) ("[t]he question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo" (internal quotation marks omitted)).

development of a budget, the maintenance and repair of the common elements, the placement of insurance, and the provision for common expenses and common liabilities." (Citations omitted; internal quotation marks omitted.) *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 735, 904 A.2d 188 (2006).

With certain delineated exceptions, the tasks enumerated in the preceding paragraph, which include the maintenance and repair of common elements, are generally committed to the discretion of the association.[13] See, e.g., id., 734 ("[w]hen a court is called [on] to assess the validity of [an action taken] by a board of directors, it first determines whether the board acted within its scope of authority and, second, whether the [action] reflects reasoned or arbitrary and capricious decision making" (internal quotation marks omitted)); see also *Lamden* v. *La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal. 4th 249, 265, 980 P.2d 940, 87 Cal. Rptr. 2d 237 (1999) ("[when] a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise").

The various rights and obligations imposed by CIOA are, however, judicially enforceable; see General Statutes § 47-212 (b); and unit owners are authorized to bring individual causes of action. See General Statutes § 47-278 (a) ("[a] declarant, association, unit owner or

---

[13] By logical extension, this will sometimes encompass the discretion not to act. See, e.g., *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 50 n.33, 148 A.3d 1123 (2016) (citing 2 Restatement (Third), Property, Servitudes § 6.13, p. 233 (2000)), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2007).

any other person subject to this chapter may bring an action to enforce a right granted or obligation imposed by this chapter, the declaration or the bylaws"). The remedies provided by CIOA are to be broadly construed. See General Statutes § 47-212 (a); *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 678, 657 A.2d 1087 (1995).

CIOA, the declaration, and the bylaws each distinguish between maintenance and repair of common elements versus individual units. Under CIOA, associations are responsible for the former, and individual owners for the latter. Specifically, General Statutes § 47-244 (a) provides in relevant part that, "[e]xcept as provided in subsection (b) of this section, and subject to the provisions of the declaration, the association, even if unincorporated . . . (6) [m]ay regulate the use, maintenance, repair, replacement and modification of common elements . . . ." Section 47-249 (a) follows and more specifically provides in relevant part: "Except to the extent provided by the declaration . . . or subsection (h) of section 47-255, the association is responsible for maintenance, repair and replacement of the common elements, and each unit owner is responsible for maintenance, repair and replacement of his unit. . . ." Likewise, § 26.1 (g) of the declaration delineates the responsibilities of the defendant and provides in relevant part that the executive board, on behalf of the defendant, "[r]egulate[s] the use, maintenance, repair, replacement and modification of the [c]ommon [e]lements, including [l]imited [c]ommon [e]lements . . . ." Section 5.2 (a) and (b) of the bylaws further provides in relevant part: "All maintenance of and repairs to any [u]nit . . . shall be made by and at the expense of the [o]wner of such [u]nit . . . . All maintenance and repairs of and replacements to the [c]ommon [e]lements . . . shall be made by the [e]xecutive [b]oard and be charged to all [u]nit [o]wners as a [c]ommon [e]xpense . . . ." These statutory and contractual provisions

impose related, but separate, general duties of upkeep for individual units and common elements.

When repairs to an insured common element are required, the discretion to effect repairs otherwise afforded to an association is removed. Section 47-255 provides in relevant part: "Any portion of the common interest community for which insurance is required under this section which is damaged or destroyed *shall be* repaired or replaced promptly by the association unless (A) the common interest community is terminated . . . (B) repair or replacement would be illegal under any state or local statute or ordinance governing health or safety, or (C) eighty per cent of the unit owners, including every owner of a unit or assigned limited common element that will not be rebuilt, vote not to rebuild. The cost of repair or replacement in excess of insurance proceeds and reserves, regardless of whether such excess is the result of the application of a deductible under insurance coverage, is a common expense." (Emphasis added.) General Statutes § 47-255 (h) (1); see Governors Ridge Assn., Inc., Second Amended and Restated Declaration § 23.1 (April 28, 2004) (same).

Section 47-255 (h) speaks in absolute terms; it directs an association to promptly repair insurable common elements, except in limited circumstances, and provides that any costs in excess of the insurance proceeds shall be a common expense. Section 47-255 (h), however, neither expressly limits the association's responsibilities to insured common elements nor renders independent obligations or duties imposed by CIOA, the declaration, or the bylaws meaningless. Sections 47-244 (a) (6) and 47-249 (a) clearly place responsibility on the association for the maintenance and repair of common elements. But, unlike § 47-255 (h), §§ 47-244 (a) (6) and 47-249 (a) do not speak in directives and do not mandate how that responsibility is to be carried out. See Public Acts 2009, No. 09-225, § 20 (distinguishing between

mandatory and discretionary duties under § 47-244 (a)). This suggests that, although an association is responsible for the maintenance and repair of *all* common elements, the scope of responsibility differs for uninsured versus insured common elements. As a result, a plain reading of the statutes and common sense support the conclusion that an association's responsibility to maintain and repair uninsured common elements, also echoed through both the declaration and bylaws, is not absolute. This conclusion makes sense for a few distinct reasons.

First, if General Statutes § 47-249 (a) and § 5.2 of the bylaws already impose an absolute duty to maintain all common elements, the portions of General Statutes § 47-255 (h) and § 23.1 of the declaration specifically compelling the repair of insured common elements would be rendered mere surplusage, contrary to basic tenets of construction. See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010); *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 297–98, 685 A.2d 305 (1996).

Second, a blanket rule requiring uninsured common elements to be maintained—irrespective of the costs and benefits of the work required—would mandate the prompt completion of even unwarranted or unreasonably expensive repairs. Such a result would be, as the defendant's counsel suggested at oral argument before this court, untenable.[14] See *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 279 Conn. 737 ("a broad view of the powers delegated to the association is justified by the important role these communities play in maintaining property values" (internal quotation marks omit-

---

[14] For example, an association may, and indeed in this case apparently did, adopt rules by which repairs that benefit only individual owners can be charged to those owners. Section 19.2 (a) of the declaration provides that "[a]ny [c]ommon [e]xpense for services provided by the [defendant] to an individual [u]nit at the request of the [u]nit [o]wner shall be assessed against that [u]nit."

ted)), quoting 2 Restatement (Third), Property, Servitudes § 6.4, comment (a), p. 90 (2000). The delegation of such decision-making authority to associations is, indeed, "inherent in the condominium concept . . . ." (Internal quotation marks omitted.) *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 738.

Likewise, a conclusion that an association has no obligation whatsoever to repair uninsured common elements would not only ignore the language of CIOA, the declaration, and the bylaws, but also lead to its own unworkable results. For example, owners of freestanding condominiums, like those involved in the present appeal, would have no recourse because they are not permitted by statute or contract to repair common elements, and, furthermore, the association would have no responsibility for common elements unless they were insured.

B

CIOA does not expressly create a statute of limitations governing claims brought pursuant to § 47-278.[15] This does not mean, however, that no limitation period applies. "Public policy generally supports the limitation of a cause of action in order to grant some degree of certainty to litigants. . . . The purpose of [a] statute of limitation[s] . . . is . . . (1) [to] prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of

---

[15] Counts alleging breach of either express or implied warranties brought pursuant to General Statutes §§ 47-274 or 47-275, by contrast, are expressly subject to a three year statute of limitations. See General Statutes § 47-277 (a). No such limitation period is attached to the right of action set forth in § 47-278.

evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. . . . Therefore, when a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued [on]." (Citations omitted; internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 199.

"[T]he fundamental difference between tort and contract lies in the nature of the interests protected. . . . The duties of conduct [that] give rise to [a tort action] are imposed by the law, and are based primarily [on] social policy, and not necessarily [on] the will or intention of the parties. . . . Furthermore, other courts have held that, when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort. . . .

"On the other hand, [c]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Citations omitted; internal quotation marks omitted.) Id., 200.

The application of this dichotomy to the various categories of claims brought pursuant to § 47-278 provides, at least in principle, for a commonsense rule: violations of duties imposed directly by CIOA sound in tort and are circumscribed by § 52-577, whereas violations of the declaration or bylaws, by contrast, sound in contract

and are governed by § 52-576.[16] See, e.g., *Pasco Common Condominium Assn., Inc.* v. *Benson*, 192 Conn. App. 479, 503, 218 A.3d 83 (2019). When a claim may be pursued separately under both statutory and contractual theories, the longer of the two limitation periods should be employed. See id., 503 ("although the issue of whether a claim sounds in tort or contract sometimes is a binary determination, that is not always the case"); see also id., 503–504 ("when two statutes of limitation[s] conflict, or when a claim may be pursued on two theories having different limitation periods, the longer limitation period applies" (internal quotation marks omitted)), quoting 51 Am. Jur. 2d 547, Limitation of Actions § 76 (2016).[17]

## II

With these principles in mind, we begin by briefly addressing the plaintiffs' implicit assertion that both the Appellate Court and the trial court erred in applying § 52-577 to the portion of the CIOA claims seeking recovery for the defendant's alleged misconduct during the course of construction. The plaintiffs' claims lack merit because the amended pleadings do not allege that either the declaration or bylaws were violated during the construction process.

As previously noted in this opinion, the initial complaints in these actions alleged that the defendant had negligently designed and constructed the foundations supporting the units, together with broadly worded asser-

---

[16] As this court has repeatedly stated: "[T]he declaration operates in the nature of a contract, in that it establishes the parties' rights and obligations . . . ." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 313 n.3, 984 A.2d 676 (2009); see also *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 726 n.1, 873 A.2d 898 (2005).

[17] As a result, we focus in part III of this opinion on only the contractual claims alleged in the August, 2018 amended complaints.

tions that the defendant had violated its duties under CIOA. Those pleadings did not, however, allege that the defendant had breached any provisions of the declaration or bylaws.[18] Although the original plaintiffs did eventually allege violations of the declaration and bylaws by way of amendments to their complaints on August 14, 2018, those additions related solely to their claims that the defendant had improperly failed to maintain, repair, or replace the defective foundations. See part III of this opinion. Although the amendments incorporated the facts pleaded previously, they did not attempt to connect the factual allegations related to the process of construction with the breach of any specific provision of the declaration or bylaws.

The progression of these pleadings leads us to agree with both the trial court and the Appellate Court that the CIOA claims, insofar as they relate to the construction process, alleged only statutory, as opposed to contractual, violations. As both courts aptly observed, such claims sound in tort and are, therefore, subject to § 52-577. See, e.g., *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 200 ("when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort"). In light of the undisputed facts, that three year time period prescribed by that statute would have commenced at the time the decedents purchased their respective units in 2001 and 2002. See, e.g., *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 416 n.2, 54 A.3d 1005 (2012) ("statute[s] of repose [terminate] any right of action after a specific time has elapsed, regardless of whether there has as

---

[18] Both the sixth amended complaint filed in *Canner* on September 20, 2017, and the amended complaint filed in *Puteri* on January 15, 2018, continued to allege statutory, rather than contractual, violations. Indeed, both alleged that "§ 47-278 . . . states in 'pertinent' part: '(a) A declarant, association, *unit owner* or any person subject to this chapter *may bring an action to enforce a right granted or obligation imposed by this chapter* or the bylaws. . . .' " (Emphasis in original.)

yet been an injury" (internal quotation marks omitted)); see also *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988). Because these civil actions did not commence until well over one decade later, there was no error in concluding that the claims related to the construction process were time barred.

## III

We turn next to the plaintiffs' principal claim, namely, that the Appellate Court erred in declining to conclude that the contractual CIOA claims were timely under our state's six year statute of limitations for contract actions. See General Statutes § 52-576. The plaintiffs argue that § 5.2 of the bylaws imposed a continuing, contractual duty on the defendant to maintain, repair, or replace common elements and that the defendant breached that duty in 2016 by repudiating its obligation to repair the foundations. The defendant responds by arguing that, although it has an absolute duty to maintain or repair *insured* common elements under § 23.1 of the declaration, it has no duty to repair foundations, which are uninsured common elements. From that starting point, the defendant then argues that (1) no contractual duty could have existed, (2) the claims necessarily sounded in tort, and (3) the claims were untimely under § 52-577. We conclude that § 5.2 of the bylaws imposes a contractual duty to maintain common elements and that the claims that the defendant breached that duty in 2016 were timely under § 52-576.

As previously noted in this opinion, the original plaintiffs amended their respective complaints on August 14, 2018, to allege, among other things, that the defendant had violated § 5.2 of the bylaws by failing to repair the foundations supporting their units. To repeat, § 5.2 (b) of the bylaws provides in relevant part: "All maintenance and repairs of and replacements to [c]ommon [e]lements and [l]imited [c]ommon [e]lements  . . .

shall be made by the [e]xecutive [b]oard and be charged to all [u]nit [o]wners as a [c]ommon [e]xpense . . . ."[19] Both the trial court and the Appellate Court declined to read § 5.2 of the bylaws as imposing any duty on the defendant. *Canner* v. *Governor's Ridge Assn., Inc.*, supra, 210 Conn. App. 646 and n.14. That reasoning, however, was based primarily on the conclusion, reached by way of a negative implication, that § 23.1 of the declaration, which affirmatively requires the repair of *insured* common elements, precluded the existence of any duty to repair *uninsured* common elements.[20] Id. We reject that premise.

The fact that the defendant possesses discretion with respect to the maintenance of uninsured common elements, for the reasons previously stated, does not insulate the exercise of that discretion from judicial review. See *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 279 Conn. 734; see also *Lamden* v. *La Jolla Shores Clubdominium Homeowners Assn.*, supra, 21 Cal. 4th 265, 270; 17 C.J.S. 439, Contracts § 43 (2011) ("[t]he mere existence of a discretionary duty does not render a contract unenforceable"). The broad, remedial purpose of CIOA supports a conclusion that both statutory

[19] The language of § 5.2 of the bylaws is congruent with the statutory duties relating to the repair of common elements imposed by CIOA itself. See General Statutes § 47-249 (a) ("[e]xcept to the extent provided by the declaration . . . or subsection (h) of section 47-255, the association is responsible for maintenance, repair and replacement of the common elements, and each unit owner is responsible for maintenance, repair and replacement of his unit") Although § 5.2 of the bylaws does not employ the word "responsible," the language of both provisions clearly assigns the task of overseeing the repair of the community's common elements to the defendant alone. See Governors Ridge Assn., Inc., Second Amended and Restated Declaration, supra, § 26.1 (g).

[20] The previous emphasis placed on the distinction between insured and uninsured common elements was understandable, as the original plaintiffs had previously argued that the defendant had an absolute duty to repair the foundations under § 23.1 of the declaration. The plaintiffs have now, however, expressly conceded that point in their briefing before this court.

and contractual obligations relating to the maintenance of uninsured common elements, although vested in the discretion of the association, should continue to be characterized as a legal duty. See General Statutes § 47-212; *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 678; see also General Statutes § 47-211 ("[e]very contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement"); cf. *Dalton* v. *Educational Testing Service*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 639 N.Y.S.2d 977 (1995) ("[when] the contract contemplates the exercise of discretion, [an obligation to exercise good faith] includes a promise not to act arbitrarily or irrationally in exercising that discretion"). To conclude otherwise would, as noted previously, permit the defendant to forgo even reasonable repairs without recourse to the unit owners, leaving them without the ability to seek judicial relief in the event the decision of the defendant exceeds its discretion.

The claims that the defendant breached its contractual duties under § 5.2 of the bylaws by failing to repair the foundations supporting the decedents' units are, therefore, governed by § 52-576 (a), which provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." The law concerning when a breach of contract action accrues is well settled. "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." (Internal quotation marks omitted.) *Tolbert* v. *Connecticut General Life Ins. Co.*, 257 Conn. 118, 124, 778 A.2d 1 (2001). "The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Engelman* v. *Con-*

*necticut General Life Ins. Co.*, 240 Conn. 287, 294 n.7, 690 A.2d 882 (1997).

In the present appeal, the parties do not dispute the fact that, from the time the decedents purchased their units until 2016, the defendant repeatedly affirmed its responsibility to maintain the foundations, made minor repairs as various symptoms began to manifest, and eventually undertook steps to commence more substantial repairs. There is also no dispute that all such efforts have now ceased. In light of these facts, we conclude that the claims that the defendant breached § 5.2 of the bylaws by failing to repair the foundations underneath the decedents' units accrued at the time the defendant ceased its efforts to repair. See, e.g., *Pascarella* v. *Silver*, 218 Conn. App. 326, 351, 292 A.3d 45 ("[a] contract that creates continuing obligations is capable of a series of partial breaches or a single total breach by repudiation" (internal quotation marks omitted)) (quoting *Minidoka Irrigation District* v. *Dept. of Interior*, 154 F.3d 924, 926 (9th Cir. 1998)), cert. denied, 347 Conn. 901, 296 A.3d 171 (2023). Because the contractual claims were initially raised in 2018, we conclude that they were timely.[21]

The judgment of the Appellate Court is reversed insofar as that court upheld the trial court's disposition of the claims that the defendant had breached the declaration and bylaws by failing to effectuate repairs and the case is remanded to the Appellate Court with direction

---

[21] In reaching this conclusion, we express no opinion as to the merits of the underlying contractual claims. Although the trial court's memoranda of decision did contain a brief discussion related to whether the defendant had acted "unreasonably or in bad faith," that discussion followed only a limited evidentiary hearing relating to the statute of limitations. As a result, further proceedings are required. Likewise, because we conclude that the contractual claims did not accrue until the defendant ceased its efforts to repair, we need not address whether it would be appropriate to apply the continuing course of conduct doctrine to toll the applicable statute of limitations.

to reverse the trial court's judgments with respect to the disposition of those claims and for further proceedings consistent with this opinion; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.